# GRAVES *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF IOWA.

No. 31. Argued January 4, 5, 1897. — Decided February 15, 1897.

When the managers of a national bank make arrangements with depositors
in the bank to give them credit at the bank for larger sums than appear
upon the credit side of their accounts up to specified amounts and for a
fixed time, and the proper officers of the bank make entries thereof in
the books of the bank in good faith and in the belief that they have a
right so to do, such an entry is not a false entry within the meaning of
that term as used in Rev. Stat. § 5209, and the person so making it is not
guilty of a violation of that statute in so doing.

THE case is stated in the opinion.

*Mr. C. C. Cole* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* for defendants in
error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The plaintiff in error was convicted in the United States
District Court for the Northern District of Iowa, under sec-
tion 5209 of the Revised Statutes, of making false entries in
certain reports in regard to the condition of the Commercial
National Bank of Dubuque, of which he was president.

The indictment contained sixteen counts, all but six of
which were taken from the jury, the remaining counts being
the fourth, fifth, seventh, eighth, ninth and tenth.

The fourth and seventh counts relate to the making of
alleged false entries in the returns made respectively on the
5th days of August and October, 1887. Those counts (each
relating to one of the two returns) charged that the plaintiff
in error falsely *understated* the amount of overdrafts paid by
the bank and remaining unpaid to it on the date mentioned in
the count.

The ninth and tenth counts relate to the same reports, and each count charges that the plaintiff in error falsely *overstated* the amount of loans and discounts which the bank had made and which stood on its books at the date mentioned, the claim in fact being that, as to the sum of about $20,000 contained in the item of " loans and discounts," the return was a false statement.

The point in dispute is in regard to which heading of the returns the items amounting to about $20,000 should have been placed under; whether they should have been treated as overdrafts or as loans and discounts.

The proof regarding these four counts shows that there are in substance two charges of making false entries under the two heads of " overdrafts " and " loans and discounts " in the returns dated respectively August and October, 1887.

The fifth and eighth counts relate to the making of entries alleged to have been false in the returns for the same two quarters, and relating to the liabilities of the directors, it being therein charged that those liabilities were stated in each report at a sum much less than the actual fact required it.

The plaintiff in error having been duly arraigned upon the indictment, pleaded not guilty, and was placed on trial at a term of the District Court for the Northern District of Iowa, Eastern Division, held in December, 1892, and was convicted upon the counts above mentioned.

In the course of the trial and for the purpose of proving the guilt of the accused under the fourth count, the Government gave evidence that from the books of the bank there appeared under the head of loans and discounts, on August 1, 1887, the sum of $490,133.78; that the plaintiff in error was the president of the bank and as such signed the quarterly report to the Comptroller of the Currency as to the condition of the bank at the time last named; that under the head of loans and discounts he placed in the report to the Comptroller the sum of $551,048.60, which, as is seen, is an increase of about sixty thousand dollars over the amount as shown by the bank's books on that date. One of the items going to make up this increase was the sum of $20,465.00, and this sum was

part of a sum of $23,413.38 appearing in the bank's books to have been drawn out by certain depositors in excess of the amounts appearing in such accounts to their credit. In this way it appeared on the books of the bank that there were overdrafts, on the above date, to the extent of $23,413.38. In the return to the Comptroller the amount of overdrafts was stated to have been, at the close of business on the 1st of August, 1887, $2948.38, when in truth, as is alleged, it was the sum above named, $23,413.38. The amount taken from the above item of overdrafts was placed by the plaintiff in error in the same report under the head of loans and discounts, thus increasing that sum by that amount. Other items were placed under that heading so as to make up the difference between the $490,000.00 and the $551,000.00 as above stated. The Government claims the plaintiff in error had no right to take those items amounting to over $20,000 from the heading "overdrafts" and place them under that of "loans and discounts," and that an intentional act of that kind was a violation of the statute, if meant to deceive. The plaintiff in error urged that he had the legal right to do as he did, and upon being called to the witness stand he testified substantially as follows:

"Certain overdrafts were classified and were put in the reports as loans and discounts, because the different persons making such overdrafts had spoken to the managers of the bank and obtained permission to make the same. Those overdrafts which had not been arranged for were reported as overdrafts. Those that were included in loans and discounts were accounts that had been arranged for and permission asked to overdraw. In other accounts treated as overdrafts were those where the person drew his check in advance without asking permission, and when this was done it was treated as an overdraft. Where they asked permission to overdraw and such permission was granted it was classified as a loan. The overdraft made upon permission of the bank was treated as a loan. The reports severally contained the overdrafts treated as a part of the loans and discounts, while the others were classed in the reports as overdrafts. (The witness names the persons

whose accounts were included in the loans and .discounts, and
each of whom had permission and had arranged for the over-
draft; also the names and amounts of those whose accounts
were overdrawn.)

"All these matters were brought before the board in detail.
Explanations of the permission to overdraw were made to the
board at their meetings. Each and all those accounts included
in the loans and discounts had permission to overdraw and had
arranged therefor. A classified list of overdrafts, showing the
book loans and overdrafts proper, was laid before the direc-
tors at each of their meetings. A loan in the form of an
overdraft account was classified as book loan and the others
as overdrafts. They were presented to the directors in two
lists; one headed as book loans and the other as overdrafts;
and in this way they were presented to the board of directors
at each of their meetings. Those persons having book loans
were granted them for different reasons. The book loans
were made to parties who had been to the bank and made
arrangements to overdraw. The overdrafts were where checks
were presented and paid without any arrangement or author-
ity for the drawers to overdraw their accounts. Where an ac-
count had been overdrawn at first without permission, and
parties thereafter made arrangement for its continuance for
a few days, it was classed under the heading book loans."

Explanations of his action were given in regard to the other
items in the report to the Comptroller, making up the sixty
thousand dollar increase of loans and discounts, the sufficiency
of which it is not necessary here to discuss. It appears from
the reasons stated by the plaintiff in error for changing the
amounts of "loans and discounts" and "overdrafts," that the
items making up the $20,000 were regarded by him as a loan
by the bank and not an overdraft; and although it appeared
from an examination of the individual accounts of depositors
in the bank that more money had been drawn by certain of
them than stood to their credit on the books of the bank,
yet he thought this did not necessarily show that the excess
of the draft over the amount of the credit was an overdraft,
but that where the overdrafts had been arranged for by the

depositors with the managers of the bank and consent, been given by them that such overdrafts should be made and would be honored to the amount agreed upon, such a transaction amounted to a loan and not an overdraft. Under these circumstances the court charged the jury, among other things, as follows:

"The farther question remains as to this 'loans and discount' entry in the report to the Comptroller, did the defendant make a false entry in such report, when he entered as 'loans and discounts' the farther sum of $20,465, which he has testified before you is composed of part of the overdrafts that day shown by the books of the bank to exist in the accounts of various depositors whose names he has given you? It will be convenient to consider this question in connection with the farther charge in the indictment, with reference to said report of August 1, 1887, that defendant made a false entry in said report as to overdrafts.

"The proof shows that the amount of overdrafts entered in said report was the aggregate of $2948.38, and defendant has testified before you that the aggregate overdrafts upon that day, as shown by the books of the bank was the sum of $23,413.38, so that the books of the bank at the close of business on August 1, 1887, show an aggregate of overdrafts in excess of that entered in said report of $20,463. In other words, while the books of the bank, in the progress of their regular keeping from day to day, showed the accounts of its depositors to be then overdrawn in the aggregate of $23,413.38, the entry in the report to the Comptroller as to the condition of overdrafts that day was $20,465, less than shown by the books, and the entry in such report was the sum of $2948.38.

"You will have noticed that this difference ($20,465) is the exact amount which defendant testifies he entered from or took from the overdraft account of the books of the bank, and put into the entry in the report as to 'loans and discounts.' And the matter may be thus stated: If defendant rightly did this; that is, if in so doing he made a report to the Comptroller of the true condition of the bank, he did not then make a false entry in these particulars. But if the entry in report-

ing the overdraft that day as $2948.38 instead of $23,413.38, was not a truthful entry, then it would naturally follow that the entry in the 'loans and discounts' of said $20,465 of overdrafts was also not a truthful entry. For this sum of $20,465 of overdrafts could not have been truthfully entered in both overdrafts and loans and discounts. In which did a truthful entry of the condition of the bank require it to be entered ?

"Now there is no difficulty in understanding what an overdraft is. There is no conflict in the testimony on this point. The books of the bank as testified to by defendant and by all the witnesses, and as themselves in evidence before you, show that an overdraft occurs whenever a depositor overdraws the amount of his deposit. I deposit in a bank a thousand dollars subject to be checked out. I commence to check it out. And whenever the amount of my checks paid by the bank exceeds the amount of the funds I have deposited, an overdraft occurs in my account, and such overdraft is the amount the bank has thus paid, over and beyond the amount I have deposited.

"Where then in the report to the Comptroller should these overdrafts appear ? You will find upon looking at the report made to the Comptroller that it contains a heading called 'Overdrafts.' This heading is 'Overdrafts,' plainly and simply, and without more, 'overdrafts.' *This is the form the Comptroller has prescribed and which it was the duty of the defendant to follow and to enter correctly and truthfully whenever he made an entry in said report with regard to the condition of the bank as to overdrafts.*

"Counsel for defendant have argued to you that an overdraft is, in fact, a loan, and that, therefore, the defendant was justified in including 'overdrafts' in 'loans and discounts.' But the Comptroller demanded that the bank should report 'overdrafts' in one place in the report, as well as 'loans' in another place. Defendant assumed to report 'overdrafts.' Did he make a true entry thereof? No explanation on the report advises the Comptroller that the entry as to 'overdrafts' is an impartial or incomplete entry as to 'overdrafts' actually existing at the time the report assumed to give them.

"There is no separate heading of 'overdrafts arranged for' in the report."

The effect of this charge was to tell the jury in substance that the plaintiff in error was required by the law to place under the heading "overdrafts" the full sum which the bank books showed had been drawn out by the depositors of the bank over and above the amounts which they had severally deposited therein; that a failure to do this was a failure to comply with the law, and that a transfer of any portion of such excess from the heading "overdrafts" to the heading "loans and discounts" was the making of a false entry, and under the general directions of the charge, if intentionally and wilfully made, it was a violation of the statute and a crime on the part of the plaintiff in error. It took away from the jury the right to even consider, upon the question of intent, the explanation given by the plaintiff in error for his changing the twenty thousand dollar item from under the heading "overdrafts" to that of "loans and discounts."

If the jury believed the testimony given by the plaintiff in error in regard to the arrangements which had been made by certain depositors in the bank with its proper managers to give them credit at the bank for a larger sum than appeared on the credit side of their accounts, up to a certain amount and for a certain time, and if under such circumstances the plaintiff in error made the entries in good faith and in the belief of his right so to do, they were not false entries within the meaning of the statute, and he was not guilty of a violation thereof in making them. The charge of the learned judge substantially took away this defence and held the plaintiff in error guilty if he knowingly and wilfully placed the alleged overdrafts under the heading of loans and discounts, a fact about which there was no dispute, ignoring thereby the right of the plaintiff in error to have the jury pass upon the question whether they had been arranged for in good faith as demand loans. This charge had necessarily a prejudicial effect upon the defendant with regard to the other counts (fifth and eighth) of the indictment.

We think the court erred in the above charge, and the judgment must, therefore, be

*Reversed, and the cause remanded with instructions to grant a new trial.*

MR. JUSTICE HARLAN dissented.