# Court of Appeals.

November, 1904.

## THE PEOPLE v. CHARLES BONIER.

### (179 N. Y. 315.)

1. MURDER—EFFECT OF EVIDENCE OF GOOD CHARACTER.

Evidence of good character may of itself create a reasonable doubt, when without it none would exist, and upon the request of the accused the jury should be charged that such evidence, in the exercise of sound judgment, may be sufficient to warrant an acquittal, even if the rest of the evidence should otherwise appear conclusive.

2. SAME—ERRONEOUS DENIAL OF REQUEST TO CHARGE.

Where the evidence against the accused, upon a trial for murder, is entirely circumstantial and he has produced evidence of his good character and good reputation in the community where he had lived for many years, which is not attacked by the prosecution, and the body of the charge does not cover the point raised by the request, it is reversible error to refuse to charge, when requested by the defendant, "that the presumption which arises as to the defendant's good character, both from the failure to attack it and from the testimony given, may of itself be sufficient to raise a reasonable doubt as to the defendant's guilt."

APPEAL from a judgment of the Supreme Court, rendered January 22, 1904, at a Trial Term for the county of Erie, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

Philip V. Fennelly for appellant. The court erred when it refused to charge that the presumption arising from proof of the defendant's good character may of itself be sufficient to raise a reasonable doubt as to the defendant's guilt. (Cancemi v. People, 16 N. Y. 501, Remsen v. People, 43 N. Y. 6; 2 Russell on Crimes, 785; Roscoe's Cr. Ev. 89, 90; 3 Greenl. on Ev. 25.)

Edward E. Coatsworth, District Attorney (Frank A. Abbott of counsel), for respondent. The court did not err in refusing to charge that the presumption arising from proof of the defendant's good character may of itself be sufficient to raise a reasonable doubt as to the defendant's guilt. (Remsen v. People, 43 N. Y. 6.)

VANN, J.

On the sixteenth of January, 1904, the defendant was convicted upon an indictment found December 22nd, 1903, charging him with the crime of murder in the first degree, committed in the city of Buffalo on the 20th of November, 1903, by taking the life of one Franz Freher, with willful and deliberate purpose.

The evidence against the defendant was wholly circumstantial, but it tended strongly to establish his guilt and clearly warranted the submission of the case to the jury. A careful review of the testimony has led us to the conclusion that the verdict was not against the weight of evidence, and that it should not be disturbed, unless some error, duly raised by exception, was committed during the trial of such a nature as to give rise to the presumption that the defendant suffered prejudice therefrom.

Evidence was given by witnesses called in behalf of the defendant tending to show that his general reputation from the speech of people, in the community where he had lived for many years, was good and that they had never heard anything against him. No evidence was given in behalf of the People in relation to his reputation or character. In charging the jury upon this subject the court said: "You will take into account the evidence of these two witnesses who testified in behalf of the defendant with reference to his character. They said they had known him, one of them eight months or nine months, and made an investigation of his character and standing, or his reputation perhaps would be better, and so far as he learned it was good and he so reported. The other gentleman had known him some time, and so far as he knew, his reputation was good. You have a right to take that into account. He was at liberty to swear six witnesses. He was under no obligation to do so, but he might have done so. It is proper for you to take into account the fact that these witnesses have testified that he

was a person of good reputation in the community where he lived, for the purpose of discrediting the weight and probability of the circumstances sought to be established, and in addition, to create a probability of innocence. No matter what his standing might have been in the community where he lived in the past, he might yet be guilty. So you will observe it is proper to be taken into account by you as bearing upon the probability as to whether or not he is guilty of the crime charged in the indictment."

The court had previously charged upon the subject of reasonable doubt that "it is for the people to prove that the defendant committed the crime and prove it beyond a reasonable doubt. The case made to convict beyond a reasonable doubt need not be so conclusive as to repel all other possible conclusions. There might be some possible doubt about any given statement of facts, but it is such a doubt as a reasonable man would have with respect to the truth of a fact. That is what is meant by a reasonable doubt. Not that the evidence must be conclusive and absolute beyond peradventure, but that it is reasonably established and that, therefore, there is no reasonable doubt about it."

The following extract from the record sets forth three consecutive requests to charge presented by the counsel for defendant, the action of the court thereon and an exception taken to the final ruling.

"Mr. Murphy: I ask your honor to charge that in the absence of any testimony upon the subject of character the presumption is that the defendant's character is good.

"The Court: That is true.

"Mr. Murphy: I ask your honor to charge that there is testimony in this case, and that if the jury believe it, believe the testimony of these witnesses upon the subject of the defendant's character, that that is proof conclusive of good character.

"The Court:    Yes, on that subject I should think so.    I will charge it.

"Mr. Murphy.    Now, I ask your honor to charge the jury that the presumption which arises as to the defendant's good character, both from the failure to attack it and from the testimony given, may of itself be sufficient to raise a reasonable doubt as to the defendant's guilt.

"The Court: That I deny.    The jury should consider the evidence of good character for the purpose mentioned.

"Mr. Murphy:    I except."

The exception thus taken raises the only serious question that we have before us for consideration.    The law as to the weight which a jury may give to evidence showing that the accused was a person of good repute is so well settled in this state that counsel do not seriously differ as to what the law is, but they differ widely as to whether it was complied with by the court in this case.    We will refer to a few of the authorities and to the reasoning of learned judges in laying down the rule, so that the foundation and force thereof may be understood, before we attempt to apply it to the case in hand.

In an early case upon the trial of an indictment for murder, the court "in connection with many just observations as to the importance and effect of proof of good character    *   * * stated to the jury that where the question was one of great and atrocious criminality, evidence of good character, and of a man's habitual conduct under common circumstances, must be considered far inferior to what it is in the instances of accusations of a lower grade; but still, even with regard to the higher crimes, testimony of good character, though of less avail, was competent."    The judgment was reversed because the charge tended to control the weight of the evidence and was calculated to mislead the jury as to the effect which it might receive.

The court said:    "The principle upon which good charac-

ter may be proved is, that it affords a presumption against the commission of crime. This presumption arises from the improbability, as a general rule, as proved by common observation and experience, that a person who has uniformly pursued an honest and upright course of conduct will depart from it and do an act so inconsistent with it. Such a person may be overcome by temptation and fall into crime, and cases of that kind often occur, but they are exceptions; the general rule is otherwise. The influence of this presumption from character will necessarily vary according to the varying circumstances of different cases. It must be slight when the accusation of crime is supported by the direct and positive testimony of credible witnesses; and it will seldom avail to control the mind in cases where the testimony, though circumstantial, is reliable, strong and clear. But in cases where the other evidence is nearly balanced, but slightly preponderating against the defendant, the presumption from proof of good character is entitled to great weight, and will often be sufficient to turn the scale and produce an acquittal. I am unable to perceive why this presumption may not, and should not, as a general rule, be as controlling in cases of high crimes as in those of smaller ones. In a case of murder, arson, robbery or any other great offense, when it is apparent that it must have been planned and committed with great deliberation, and the evidence against the accused is uncertain, why should not proof of good character influence the judgment as powerfully as in any case? I can readily see that in cases of great crimes, evidently perpetrated with but little if any forethought, under the influence of some sudden and powerful motive, such proof will be comparatively weak, but it will be so in reference to any other crime with similar circumstances. The attending circumstances must, I think, determine the degree of force which evidence of good character should have; it is not in

ordinary cases affected by the grade of the offense." (Can-
cemi v. People, 16 N. Y. 501, 506.)

In a later case, where the indictment was for grand lar-
ceny, the court charged that good character is "a fact to be
considered by the jury like every other fact in the case, no
matter what the other testimony in the case might be; but
when evidence is positive, leading to a conviction logically
and fairly derived of guilty from all the testimony, the sim-
ple fact that a person possesses good character will be of no
avail; that it is only in cases where the jury have a well-
reasoned doubt, a doubt logically arrived at, arising out of
all the testimony, that evidence of good character steps in,
and then it becomes the duty of the jury to give a verdict in
favor of the prisoner." This was held to be "clearly erro-
neous and well calculated to mislead the jury to the prejudice
of the prisoner."

In giving its reasons the court said: "There is no case in
which the jury may not, in the exercise of a sound judg-
ment, give a prisoner the benefit of a previous good charac-
ter. No matter how conclusive the other testimony may
appear to be, the character of the accused may be such as to
create a doubt in the minds of the jury and lead them to
believe, in view of the improbabilities that a person of such
character would be guilty of the offense charged, that the
other evidence in the case is false, or the witnesses mis-
taken. An individual accused of crime is entitled to have it
left to the jury to form their conclusion upon all the evi-
dence whether he, if his character was previously unblem-
ished, has or has not committed the particular crime alleged
against him. * * * Evidence of good character is not
only of value in doubtful cases, and in prosecutions for min-
or offenses, but is entitled to be considered when the crime
charged is atrocious, and also when the testimony tends very
strongly to establish the guilt of the accused, It will some-

times of itself create a doubt when without it none would exist."

Five judges concurred in this opinion, but two, while agreeing with the doctrine of the majority as to the effect of good character, voted to affirm on the ground that the charge, "looking at the whole of it, was to be construed as instructing the jury that good character was to be considered like any other testimony upon the question of guilt, but that previous good character furnishes no defense to a party accused of crime when his guilt is determined by a consideration of all the evidence, and that the charge so construed was not erroneous." (Remsen v. People, 43 N. Y. 6.)

We shall refer to but one more case, which brings the law down to a very recent period. Upon a trial for the crime of rape, the judge in his main charge said. "It is true that good character weighs for something, and it should weigh when a man is charged with crime. I leave it to you to say to what extent the evidence convinces you with reference to the good character of the defendant, and what weight that character, as it is established, should have upon your consideration of this case." The defendant's counsel requested the court to instruct as follows: "I ask the court to charge the jury that the character of the accused may be such as to create a doubt in the minds of the jury and lead them to believe, in view of the improbability of a person of such character being guilty, that the other evidence is false." The court declined to so charge, except as charged, and the defendant excepted.

While we did not unite in judgment upon another branch of the case, all the judges voted to reverse because this exception raised reversible error. Judge BARTLETT, speaking for us all upon this point, said: "This refusal was obvious error, as defendant was entitled to have the jury distinctly instructed that good character will sometimes of itself create a doubt when without it none would exist. The

court had been previously requested by defendant's counsel to charge as follows: 'I ask the court to charge the jury that the jury may in the exercise of sound judgment, give the person the benefit of good character, no matter how conclusive the other testimony may appear to be.' The court in response charged, 'I leave it to the jury to say what weight good character should have in determining the question of the defendant's guilt or innocence. I think it is a proper subject for their consideration. Exception was taken to the refusal to charge as requested. The vice of this ruling is the same as in the one already considered. The jury were not clearly informed as to their power in the exercise of a sound discretion. The defendant was entitled to the charge as requested, without change or comment." (People v. Elliott, 163 N. Y. 11.)

It is, therefore, the law that evidence of good character may of itself create a reasonable doubt, when without it none would exist, and that upon the request of the accused the jury should be told that such evidence, in the exercise of their sound judgment, may be sufficient to warrant an acquittal, even if the rest of the evidence should otherwise appear conclusive.

The testimony in the case now before us shows that if the defendant committed the crime charged against him, he did it with deliberation and forethought. It was not the result of sudden impulse, but of careful premeditation and deliberate execution, for the purpose of robbing the victim. Proof of good character is of peculiar value in such a case, especially when the evidence of guilt rests, as it does here, entirely upon circumstantial evidence, because the deliberate perpetration of the gravest of crimes is so inconsistent with an upright and orderly life as to cause the mind to hesitate and to examine and re-examine the circumstances with the utmost care before accepting them as conclusive proof.

The instruction asked was of great moment to the defend-

ant, confronted, as he was, with a strong case against him. Whether his character was good was for the jury to decide, but they were not permitted to give the full effect to that fact, if they found it, which the law authorizes. An innocent man may be so surrounded by adverse circumstances that his only reliance is his naked denial, which ordinarily has but little weight, and proof of good character, which may have great weight.

We think that the charge, as a whole, tended to mislead the jury as to the effect which they might give to such evidence. The body of the charge did not cover the point, as the jury were there told that they might consider good character for two purposes, first, to discredit the weight and probability of the circumstances sought to be established; and, second, to create a probability of innocence. In response to a distinct request for an instruction that good character may of itself be sufficient to raise a reasonable doubt, the court denied the proposition of law embraced in the request, but charged that the jury should consider the evidence for the purposes mentioned, apparently meaning the two distinct purposes mentioned eo nomine in the body of the charge. No attempt was made to instruct the jury as to the weight which good character may have, independent of any other evidence, and this was the main chance of the defendant.

It is claimed, however, that the request was not technically correct in form, because it included in its assumption the failure of the People to attack character as one of the elements. While we may overlook technical errors in order to affirm in a clear case, we should never invoke technicalities, nor resort to severe or narrow criticism of a request to charge, in order to uphold a judgment of death. As the substance of the request is not criticised, we should disregard informalities when they are all that stand between the doom of the judgment and an absolute right to a new trial.

But there was not even a technical error in the request,

which was correct in its facts and sound in its law.   When the defendant rested the People had the right to attack his character because he had opened the door.   As the testimony stood just before the People finally rested, they could have called witnesses to show that from the speech of people his reputation was bad if such was the fact.   They did not do so.   In other words, they did not attack his character,  although they had a right to, and that is all that is stated in the language criticised.   The assumption was literally true,  and hence could do no harm.   The request when fairly construed  means that from the testimony given by the defendant as to his character and the failure of the People to give any evidence on the subject, a reasonable doubt might arise.   The request refused should be read in connection with the two requests charged which immediately precede it. The court had already said that ''in the absence of any testimony upon the subject of character the presumption is that the defendant's character is good;'' also, that if the jury ''believe the testimony of these witnesses upon the subject of the defendant's character, that is proof conclusive of good character.''   Then follows the only request which gives point to those previously charged, by stating the effect which good character might have and the jury were not informed as to their power in this regard, but were left in ignorance of the law upon a subject of supreme importance to the defendant.

It is also claimed that when the trial justice refused the request and charged that ''the jury should consider the evidence of good character for the purposes mentioned,'' he meant to include, as one of those purposes, that such evidence might of itself raise a reasonable doubt, but this leads to the absurdity that the court both charged and refused to charge as requested.   The first response to the request was, ''I deny it.''   What was thus denied?   If the response was not a denial of the proposition that the evidence in question

might have the effect claimed, it was clearly a refusal to charge that that was the law. What was further said? Simply that the jury might consider the evidence "for the purposes mentioned," obviously meaning those mentioned in the body of the charge, for the learned justice could not have meant for a purpose which he had just declared in effect was not warranted by law.

What the defendant asked and should have had was an instruction that such evidence of itself might raise a reasonable doubt. He did not get it. The jury decided the case without knowing the law. The effort to have them told what the law was upon a vital point, met with a denial. They went to the jury room not only uninformed, but, as they may have understood the words of the court, misinformed as to their power. We cannot say judicially that they would have found as they did if they had been properly instructed and, hence, we cannot overlook the error under section 542 of the Code of Criminal Procedure. The "technical errors or defects" mentioned in the statute mean such as do not affect a substantial right and could not in reason have changed the result. A presumption of injury conclusively arises whenever it is apparent that the erroneous ruling may have affected the verdict. The exception under consideration raised reversible error and unless due effect is given to it, the precedent may hereafter put in jeopardy the lives of the innocent. However clear the guilt of the defendant may appear to be, it is our duty to reverse the judgment of conviction and order a new trial, not in the exercise of our discretionary power, but in obedience to the command of law.

CULLEN, Ch. J., O'BRIEN, MARTIN and WERNER, JJ., concur; GRAY and HAIGHT, JJ., absent.

Judgment of conviction reversed.