THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HENRY E. MILLARD, Appellant.

Third Department, April 29, 1936.

*Bert T. Baker*, for the appellant.

*Arthur G. Adams, District Attorney*, for the respondent.

HEFFERNAN, J. Appellant was indicted by the grand jury of Tompkins county in February, 1935, for the crime of burglary, third degree, and grand larceny, second degree, in having broken into and entered the chicken coop of one Stoughton and stolen therefrom 174 fowls — barred Plymouth rocks and Rhode Island reds — of the value of more than $100. After a trial on this indictment in the County Court, lasting seven days, during which the jury deliberated nearly twenty-four hours after the cause was submitted to them, a guilty verdict of petit larceny was returned. After the rendition of such verdict the court sentenced appellant to serve one year in the penitentiary and to pay a fine of $500, or in the alternative to serve 500 additional days of imprisonment. That judgment is the subject of this review.

The record discloses that the jury encountered difficulties in arriving at a conclusion. After they had deliberated for twelve hours they reported that they were unable to agree. The court declined to discharge them and directed them to continue their deliberation. Later the jury returned and announced that they had made the following written finding: " We, the jury, after careful deliberation, have agreed that the twelve barred rock pullets and one Rhode Island red fowl with a crushed toe found in the possession of Henry Millard as being the property of Charles Stoughton." The court refused to accept this finding as a verdict and directed the jury to retire and find a verdict of guilty or not guilty. The jury thereupon retired and later reported: " We, the jury, have agreed that Henry Millard stole the twelve barred rock pullets and one Rhode Island red fowl with the crushed toe found in his possession from Charles Stoughton." The court again refused to accept the finding as a verdict and instructed the jury that if they found the value of the property stolen was not more than $100 their verdict must be petit larceny. Without again retiring, the

foreman of the jury then announced: " Then we have to find the defendant guilty of petit larceny for the complainant Charles Stoughton testified that the value of the fowls stolen from him was 80 cents each." Each of the other jurors acquiesced in the statement of the foreman and thereupon a verdict of petit larceny was recorded. The prosecution contended that appellant had stolen 174 fowls on December 29, 1934; the jury found that thirteen of these were found on his premises four days later.

The proof of the guilt of appellant rests almost wholly upon circumstantial evidence. There is no direct proof of any fact from which guilt may be inferred, unless it be the evidence that thirteen of the fowls found on appellant's premises is sufficient proof of the fact. The ownership of the chickens found was sought to be established by the opinions of experts, as to the " strain " and " varieties " of the breeds involved — rocks, reds and white leghorns. A letter written by one of the experts, Professor Hall of Cornell University, was received in evidence in which the professor in answer to an inquiry spoke of the impossibility of identifying chickens in a flock. That letter closes with this significant paragraph: " You ask in your letter whether you think one could look a flock over and then pick out of a large flock the ones from your flock that might be there. I do not believe that this could be done successfully, particularly since the birds are the same variety."

Surely that letter seriously weakens, if it does not entirely destroy, the opinion evidence upon which this case is mainly based.

When a conviction rests wholly on circumstantial evidence, it is necessary that there shall be positive proof of the facts from which the inference of guilt is to be drawn, and such inference must be the only one that can reasonably be drawn from such facts, and must also be inconsistent with any other conclusion. (*People* v. *Fitzgerald*, 156 N. Y. 253; *People* v. *Razezicz*, 206 id. 249; *People* v. *Giordano*, 213 id. 575.)

In order to warrant a conviction on circumstantial evidence it is necessary not only that the circumstances all concur to show that the prisoner committed the crime but that they all be inconsistent with any other rational conclusion. Looking at all the proof, inculpatory and exculpatory, circumstantial evidence substantiating the inference of guilt must exclude to a moral certainty every other reasonable hypothesis.

Appellant has strenuously denied any participation in the crime charged. He must be presumed innocent until he is proven guilty. Without discussing the evidence in detail in our opinion the inferences from the facts shown are not sufficiently conclusive to exclude all other inferences in order to justify the judgment of conviction.

The evidence pointing to the guilt of appellant is unsatisfactory and inconclusive. The testimony as a whole is not inconsistent with his innocence. If a new trial be had guilt or innocence may be more clearly and conclusively established. Passing the question of the sufficiency of the evidence the record discloses errors so serious and so prejudicial to the rights of appellant that the judgment of conviction must be reversed.

In April, 1924, appellant was sentenced to Auburn State Prison for a term of one year and six months on his plea of guilty to burglary, third degree, and grand larceny, second degree. After serving part of his sentence he was paroled. Since that time he has borne a good reputation.

Appellant called eleven witnesses, composed of his neighbors, the supervisor of his town and the sheriff of the county, who testified as to his good character. No attempt was made to offer contrary proof. On cross-examination the district attorney questioned appellant as to whether he had stolen grass seed and clover seed at Rushville; stolen beans and barley from Whalen and Pelling; broken into a place owned by a man named Davis; burglarized the premises of one Townsend; stolen chickens from one Colegrove; stolen an automobile from one Lee, and if he had not plead guilty at various times to more than twenty offenses. In each instance appellant made denial. The district attorney made no attempt to offer proof to substantiate the insinuations contained in his questions. Inquiries of like nature were put to the character witnesses and also denied. In his summation the district attorney said: " Millard is a successful truck gardener and also a successful chicken thief." Referring to one of the character witnesses from whom he was unable to elicit anything derogatory to appellant, the district attorney in his closing argument remarked: " Roy Albright would have given $500 to have kept off the witness stand. Did he not quiver on the witness stand, fearing his buildings would burn?"

Every person charged with crime is entitled to a fair and impartial hearing and it is a duty resting on the courts to see that this guaranty conferred by law on every citizen is upheld and sustained. Obviously the questions and statements of the district attorney to which we have referred were designed to incite prejudice of the jury and there can be little doubt that they affected the result. Such appeals went far beyond the bounds of fair comment and good taste and constituted such a transgression of oratorical license that we may not ignore them. We might be inclined to disregard unwarranted and improper statements by the district attorney if the guilt of appellant were reasonably certain, but in this case the conclusion is irresistible that the insinuations and comments materially

affected appellant's substantial rights. It is the duty of the district attorney to be fair and impartial in presenting the evidence for the prosecution and in examining and cross-examining witnesses. When prosecuting officers indulge in statements and in insinuations without admonition or rebuke by the trial court, of a character calculated to irrevocably affect and sway the minds of jurors, they must not expect that an appellate court will stultify itself by ignoring such errors.

The trial judge also erred in his charge to the jury. As previously stated, appellant offered substantial proof as to his good character. After calling the attention of the jury to appellant's release from prison the trial judge said: " It is his claim that he has not violated the law since then, and his reputation has been good. Proof shows that the defendant conducted himself in an unsatisfactory manner, frequented undesirable places, engaged in questionable amusement, and was with persons under conditions where his general reputation could not be inferred." Not only is there no evidence to sustain this instruction but the only proof in the record expressly contradicts it. That such a charge would do infinite damage to one on trial for crime is so apparent as not to be debatable. It undermined, if it did not entirely destroy, the evidence of appellant's good character. At the close of the charge appellant's counsel made the following request: " I ask the court to charge the jury that evidence of good character of itself may raise a reasonable doubt upon all the evidence, of the defendant's guilt," to which the court replied: " That is entirely for the jury to say."

Appellant's counsel was entitled to have the jury charged substantially as requested and the refusal to do so constitutes reversible error. (*People* v. *Bonier*, 179 N. Y. 315; *People* v. *Conrow*, 200 id. 356.)

The judgment appealed from is, therefore, reversed on the law and facts and a new trial ordered.

HILL, P. J., RHODES and BLISS, JJ., concur; McNAMEE, J., concurs in the opinion, and for a reversal of the judgment, and votes to dismiss the indictment, on the ground that the trial was full and complete, and the effort to produce all available evidence and convict the defendant was clear and pronounced.

Judgment of conviction reversed on the law and facts, and new trial granted.