LAURA RAYMOND

v.

THE PEOPLE, etc.

1. INDICTMENT—STATEMENT OF OFFENSE.—Where an information not only charges the offense, but sets out the particular way in which it was committed, the latter part cannot be rejected as surplusage.

2. PATRONIZING HOUSE OF ILL-FAME—INMATES.—The patrons of a house of ill-fame, within the meaning of the statute, making it a misdemeanor, are those who go there in the character of purchasers, to be entertained in the way of a bawdy house, and not women who are inmates of such house.

ERROR to the County Court of Alexander county; the Hon. REUBEN S. YOCUM, Judge, presiding. Opinion filed October 6, 1881.

Messrs. MULKEY & LEEK, for plaintiff in error; that evidence of general reputation of a house for chastity is not admissible to prove the character of the house, in support of one portion of the offense charged, cited State v. Boardman, 64 Me. 523; Com'th v. Stewart, 1 Serg. & R. 342; Com'th v. Hopkins, 2 Dana, 418; Rex v. Rogers, 1 B. & C. 272.

Mr. J. M. DAMRON, for defendant in error; that one person living alone may be guilty of keeping a house of ill-fame, cited Caldwell v. State, 17 Conn. 467; Reg. v. Pierson, 1 Salk. 382.

Common reputation as to the character of the inmates and the houses which they keep, is sufficient: State v. McDowell Dudley, 346; U. S. v. Gray, 2 Cranch, 675; State v. Hand, 7 Iowa, 411; State v. Brunell, 29 Wis. 435; Caldwell v. State, 17 Conn. 467.

BAKER, J. This was an information in the County Court of Alexander County, against plaintiff in error, containing two counts: the first count was for keeping and maintaining a house of ill-fame; and the second count charged that she "did unlawfully patronize a house of ill-fame by being an inmate

and patron of the said house of ill-fame." A motion to quash the second count of the information was overruled by the court, and an exception taken. Subsequently a trial was had before a jury, and plaintiff in error was acquitted upon the first count, but found guilty upon the second count. Motions for a new trial and in arrest of judgment were overruled and exceptions taken, and judgment was rendered against her for a fine of fifty dollars and for costs.

The language of section 57 of the criminal code, upon which this information is based is, " Whoever keeps or maintains a house of ill-fame, or a place for the practice of prostitution or lewdness, or whoever patronizes the same, etc." The act which is prohibited by the latter of these clauses, and made a misdemeanor, is the patronizing of a house or place of the character mentioned by the statute. The primary meaning of the verb " patronize " is " to act as patron toward." To say a person "patronized a house of ill-fame," and to say such person " was a patron of a house of ill-fame," are synonymous expressions; and the words, " being a patron of the said house of ill-fame," found in the second count, add nothing to the charge made therein that plaintiff in error " did patronize a house of ill-fame," and are to be regarded as mere words of surplusage.

The substance of this second count then is that plaintiff in error " did patronize a house of ill-fame by being an inmate of the said house of ill-fame." Not only the act which by this clause of the section is made a misdemeanor is charged, but the information sets out the particular way in which this act was done, and it cannot be rejected as surplusage. 1 Bishop Crim. Proc. sections 482, 483 and 484. It is said in Comyn's Digest: " If a man, by the allegation of a thing not necessary, shows that he had no cause of action, this, though surplusage, shall hurt."

The business of a house of ill-fame is illicit sexual intercourse. The house itself, the mere building, when separated from all idea of a keeper and the " inmates," that is, " the persons who dwell or lodge in the same house with " the keeper, ceases to be a house of ill-fame within the purview

a'id meaning of the statute. Probably under our statute a house occupied and controlled by a single prostitute might, under some circumstances, be regarded as a house of ill-fame; but in case there were inmates, women other than the keeper, they also would form constituent parts of that which constitutes the house of ill-fame, and of that which the statute makes it a misdemeanor to patronize.

The patrons of the house, within the meaning of the law, are those who go there in the character of purchasers, to be accommodated and entertained in the way of a bawdy house. Those who patronize the house in the line of business for which the house, including its inmates, are kept and maintained, are the persons contemplated by the statute. Circumstances may be imagined, and possibly may sometimes take place under which a woman would be guilty of patronizing a house of ill-fame, or place for the practice of lewdness, within the scope and intendment of this statute. All persons, whether male or female, are within the language of the statute. But the patrons of a house are not those who are occupied in a house, in and about the business of the house. Inmates of bawdy houses were not indictable at common law; and the ordinary and usual meaning of the words used by the legislature will not be extended for the purpose of including them. If it had been the legislative intention to include them as well as the keepers and patronizers of such houses within the statute, apt language to express such intention would have been used.

Statutes imposing penalties are to be strictly construed. The case made by this information is, that this woman, the plaintiff in error, patronized a house of ill fame, and that she did this, solely and only, by being an inmate of it. A majority of this court are of opinion the county court erred in over-ruling the motion to quash the second count of the information. The judgment of the court below is reversed.

Reversed.