# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MITCHELL V. COMMONWEALTH.

March 19, 1925.

Case submitted for decision before Judge Kelly qualified.

1. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Objection to Joinder of Two or More Distinct Felonies in Different Counts.*—There is no objection in point of law to joining two or more distinct felonies in different counts of the same indictment. The objection, when it exists, arises out of confounding the accused or putting him to some disadvantage, or distracting the jury. From the standpoint of pleading, the joinder is unobjectionable, and consideration for the accused alone determines the discretion of the court.

2. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Joinder of Two or More Distinct Felonies in Different Counts—Discretion of Trial Court—Election—Quashing Indictment.*—Where two or more felonies of the same character are charged in different counts of the same indictment, it is within the sound discretion of the trial court to quash the indictment as a whole or any count or counts thereof, or to compel an election on the part of the prosecutor as to what count or counts he will prosecute, having at all times due regard to the substantial rights of the accused and assuring to him a fair trial unembarrassed by confusion of issues or the necessity of defending two or more charges separated by time, place, and circumstances.

3. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Joinder of Two or More Distinct Felonies in Different Counts—Election—Case at Bar.*—In the instant case an indictment, good on its face, containing three counts was found against accused. Accused objected that by uniting the counts in one indictment he was charged with three separate and distinct offenses, and that it would be unfair to require him to defend all three in one trial. The prosecuting attorney, with the consent of the court, dismissed two of them and prosecuted only for the third. To this accused again objected claiming that it was a case not for election, but for quashing.

   *Held:* That the action of the trial court, taken at the request of the accused, did accused no harm and could not have done him any.

4. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Charging Distinct Felonies in One Count—Substituting "or" for "and"—Case at Bar.*—

In the instant case a count charged accused, a bank officer, with false entries with intent to conceal the true state of his account with the bank, and to defraud the bank and to obtain money to which he was not legally entitled. It was objected by accused that the count charged three distinct felonies. The count charged but a single transaction, one act of endeavor on the part of the accused, and that was the entry on the books of the bank.

*Held:* That as all of the intents were charged in a single count, in the conjunctive, only one offense was charged; but the proof of the entry, with any one of the intents, would be sufficient to convict.

5. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Statute in the Disjunctive—Indictment in the Conjunctive.*—If a statute makes it a crime to do this, or that, or that, mentioning several things disjunctively, the indictment may, indeed, as a general rule, embrace the whole in a single count; but it must use the conjunctive "and" where "or" occurs in the statute, else it will be defective as being uncertain.

6. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Duplicity—Quaere.*— Whether duplicity is any longer available in a criminal case in Virginia, *quaere?*

7. INDICTMENTS, INFORMATIONS AND PRESENTMENTS—*Variance.*—The accused cannot be convicted unless the evidence brings him within the offense charged in the indictment. Not only must the statute create an offense, but the indictment must charge the very offense for which a conviction is asked.

8. PLEADING—*Proof—Surplusage.*—It is elementary that what need not be proved need not be alleged; but sometimes the pleader goes beyond what is necessary and alleges something that it was not necessary to allege, and the result is that he must prove what he has alleged unless the unnecessary allegation can be rejected as surplusage.

9. SURPLUSAGE—*Adjective—Descriptive Words.*—If a single adjective describes or qualifies a necessary part of the indictment, it cannot be rejected as surplusage. "Descriptive allegations" are not confined to concrete things or persons. If the unnecessary word or words inserted in the indictment describe, limit, or qualify the words which it was necessary to insert therein, then they are descriptive of the offense charged in the indictment and cannot be rejected as surplusage. The offense as charged must be proved.

10. BANKS AND BANKING—*Section 4457 of the Code of 1919—Entries with Intent to Defraud—Indictment—Allegation that Entry was False.*—Section 4457 of the Code of 1919 condemns the making of any entry by a bank officer in any account kept in the bank, with intent to defraud, etc. In the instant case the indictment went further than the statute and charged that the accused made a *false* and fraudulent entry in his ledger account with intent to conceal the true state of his account and to defraud, etc.

*Held:* That under the indictment the Commonwealth was bound to show that the entry was false and fraudulent.

11. BANKS AND BANKING—*Section 4457 of the Code of 1919—Entry with Intent to Defraud—Instructions—False and Fraudulent Entries.*—An indictment under section 4457 of the Code of 1919 charged a false and fraudulent entry by accused. An instruction followed the language of the statute and ignored the fact that there could be no verdict of guilty unless the entry was false and fraudulent as charged in the indictment. The instruction would have been free from objection if the indictment had followed the statute, but not having done so, it was erroneous because it did not properly apply the evidence to the charge in the indictment. It directed a verdict of guilty whether the entry was true or false.

12. CHARACTER IN EVIDENCE—*General Reputation.*—There is a vast difference between reputation and character, and our chief means of ascertaining character is by evidence of general reputation. Few men know the characters of men accused of crime, but evidence of general reputation is received because of its tendency to show probable character. The limitations of human nature are such that we cannot prove character.

13. CHARACTER IN EVIDENCE—*Instructions—Good Character—Reasonable Doubt.*—It is not error in a criminal case to refuse an instruction that good character alone and of itself is sufficient to raise a reasonable doubt of the guilt of the accused.

14. CHARACTER IN EVIDENCE—*Weight a Question for Jury.*—The character of a prisoner, when proven, whether good or bad, is a fact to be considered by the jury, but its weight as affecting the guilt or innocence of a prisoner is a matter for the determination of the jury, in connection with the other facts proven in the case.

15. INSTRUCTIONS—*Reasonable Doubt—Doubtful Case—Good Character.*—In a criminal case the court instructed the jury that if they have a doubt as to any material fact necessary to a conviction in this case, then evidence of the good character of the accused may resolve such doubt into a reasonable doubt, and if the jury have such a reasonable doubt as to any element of the offense charged necessary to a conviction, they should give the accused the benefit of such doubt and acquit him; but if upon the whole evidence in the case the jury believe that the accused is guilty beyond all reasonable doubt, then the jury should find the accused guilty.

*Held:* Erroneous in that it restricted the consideration of the character evidence to a doubtful case. Furthermore, upon the hypothesis stated in the first part of the instruction the accused was entitled to a verdict of acquittal. Moreover, the instruction was in conflict with another instruction given for the accused; and in any view the instruction may have misled the jury.

16. BANKS AND BANKING—*Entries with Intent to Defraud—Opinion Evidence.*—In the instant case, a prosecution under section 4457 of the Code of 1919 against a bank officer for entries with intent to conceal the true state of his account, a witness was asked whether or not the effect of such entries would be to conceal the true state of the account of accused, to which witness replied "Yes."

*Held:* Error, because whether an expert or not, it called for the opinion of the witness upon what was practically the very issue to be tried by the jury, and not what was disclosed by the books of the bank.

Error to a judgment of the Hustings Court of the city of Richmond.

*Reversed.*

The opinion states the case.

*R. L. Montague, S. S. P. Patteson, Geo. E. Wise,* and *J. Thos. Hewin,* for the plaintiff in error.

*John R. Saunders, Attorney-General, Leon M. Bazile, Assistant Attorney-General,* and *Lewis H. Machen, Assistant Attorney-General,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

John Mitchell, Jr., was convicted of violating section 4457 of the Code, relating to making entries on bank books, and was sentenced to the penitentiary for three years.

The original indictment contained eighteen counts, but when the case was called for trial the prosecuting attorney entered a *nolle prosequi* to the last fifteen counts, leaving the first three counts; the first of which charged the larceny of $19,000.00, the property of the Mechanics Savings Bank; the second the larceny of $19,000.00, the property of the Knights of Pythias; and the third a false and fraudulent entry in the ledger account of Mitchell

in said bank, with intent, unlawfully and feloniously, to conceal the true state of the account of said Mitchell with said bank, and to defraud said bank and to assist said Mitchell to obtain money to which he was not legally entitled.

Mitchell demurred to, and moved to quash, the indictment and each count thereof, on the ground that separate and distinct offenses of a different nature were charged in the different counts and hence there was a misjoinder of counts.   The trial court was of opinion that there was no misjoinder of counts one and two, but that count three could not be joined with counts one and two.   Thereupon the attorney for the Commonwealth elected to go to trial on count three, and the court quashed counts one and two, and overruled the demurrer to count three.   This action of the trial court is assigned as error.

It is insisted by counsel for Mitchell that this is not a case for election, but for quashing; that election only applies to cases where the offenses may be properly joined in different counts in an indictment, but that where the offenses are so separate and distinct that they cannot be properly joined then the only remedy is to quash the whole indictment.   They cite and rely upon *Dowdy* v. *Commonwealth*, 9 Gratt. (50 Va.) 727, 60 Am. Dec. 314, and *Pine* v. *Commonwealth*, 121 Va. 812, 93 S. E. 652.

The question here under consideration was not involved in either the *Dowdy Case* or the *Pine Case*, and the petition concedes that "the instant case is one of undoubtedly first impression in this honorable court." There are expressions in the *Dowdy Case* which are susceptible of the construction contended for, but in the same connection it is there said:   "There are some cases of felony in which, even though the charges are

distinct, the prisoner would not be confounded, or the attention of the jury distracted; and in which, therefore, the charges may properly be included in the same indictment and tried together." What was said in the *Pine Case* had no reference to a state of facts such as is presented in the instant case.

[1] The authorities seem to agree that there is no objection in point of law to joining two or more distinct felonies in different counts of the same indictment. The objection, when it exists, arises out of confounding the accused or putting him to some disadvantage, or distracting the jury. From the standpoint of pleading the joinder is unobjectionable, and consideration for the accused alone determines the discretion of the court.

In Archbold's Crim. Pl. & Pr. (8th ed.), 295, it is said: "If different felonies or misdemeanors be stated in several counts of an indictment, no objection can be made to the indictment on that account in point of law. In cases of felony, indeed, the judge, in his discretion, may require the prosecutor to select one of the felonies, and confine himself to that. This is what is technically termed putting the prosecutor to his election."

In 1 Bishop New Crim. Pro. section 426, it is said: "Whenever the court, on seasonable application, deems that the due order of its proceedings or the interest of a party will be prejudiced by the multiplicity or ill joinder, it will in its discretion quash a count or the whole indictment, or order separate trials on the counts, or compel the prosecutor to elect on which one he will ask for a verdict, as the exigencies of the particular case and the time and manner of making the objection render most suitable." To the same effect is section 449 of the same text. In this connection it may be noted that in *Allen* v. *Commonwealth*, 122 Va. 834, 843, 94 S. E. 783, 786, it is said: "Bishop says that the 'compelling

of an election pertains not to absolute law but to judicial discretion.   Ordinarily, therefore, in most of our States, the decision of the presiding judge, granting or refusing it, is not open to revision by the higher tribunal.' "

In 14 R. C. L., 198, section 42, it is said:   "In order to avoid a difficulty and prejudice to the defendant which might result from the joinder of offenses or of counts in the same indictment or information, the doctrine of election has arisen.   As already seen, it has often been held that there is no objection in point of law to a joinder of distinct offenses growing out of different transactions, though the pleading is liable to be quashed.   In all such cases, however, where the different counts are for separate and distinct offenses, the prosecuting attorney may be required to elect on which charge he will proceed."   ·*   *   *   *   "This whole subject of election, however, is now generally considered to be a matter within the sound discretion of the court."   See also *Knox* v. *State*, 164 Ind. 226, 73 N. E. 255, 108 Am. St. 291, 3 Ann. Cas. 539; *State* v. *Bouknight*, 55 S. C. 353, 33 S. E. 451, 74 Am. St. Rep. 751.

In Beale's Crim. Pl. & Pr. sections 202 and 204, it is said:   "It is entirely proper to join two counts for distinct felonies in the same indictment" and that "when two separate felonies are charged in different counts of the same indictment, it is within the discretion of the court to·order all tried together, or to grant a separate trial."

The question is more fully discussed in *Pointer* v. *United States*, 151 U. S. 396, 14 S. Ct. 410, 38 L. Ed. 208, than in any other case that has come under our observation.   Mr. Justice Harlan, after discussing a number of texts and decisions, says:   "While recognizing as fundamental the principle that the court must

not permit the defendant to be embarrassed in his defense by a multiplicity of charges embraced in one indictment and to be tried by one jury, and while conceding that regularly or usually an indictment should not include more than one felony, the authorities concur in holding that a joinder in one indictment, in separate counts, of different felonies, at least of the same class or grade, and subject to the same punishment, is not necessarily fatal to the indictment upon demurrer or upon motion to quash, or on motion in arrest of judgment, and does not, in every case, by reason alone of such joinder, make it the duty of the court, upon motion of the accused, to compel the prosecutor to elect upon what one of the charges he will go to trial. The court is invested with such discretion as enables it to do justice between the government and the accused. If it be discovered at any time during the trial that the substantial rights of the accused may be prejudiced by a submission to the same jury of more than one distinct charge of felony among two or more of the same class, the court, according to established principles of criminal law, can compel an election by the prosecutor."

In *Lazier* v. *Commonwealth*, 10 Gratt. (51 Va.) 708, 712, it is said, *obiter:* "So far from its being necessary to prove that offenses stated in different counts of an indictment are different offenses, if they are in fact different, and are felonies, the indictment may be quashed, or the prosecutor compelled to elect for which offense he will proceed; although the indictment will not on that ground be demurrable."

In *Kane* v. *People*, 8 Wend. (N. Y.) 211, it is said: "In cases of felony where two or more distinct and separate offenses are contained in the same indictment, the court, in its discretion, may quash the indictment or

compel the prosecutor to elect upon which charge he will proceed."

[2, 3] The position of the accused is anomalous. An indictment was found against him containing three counts, each of which is good on its face. But the accused says that, by uniting them all in one indictment, he was charged with three separate and distinct offenses, and it would be unfair and unjust to require him to defend all three in one trial. The prosecuting attorney, with the consent of the court, dismissed two of them and prosecuted only for the third. Now the accused complains of the removal of the unfairness and injustice to which he objected. We know of no precedent for such a complaint, and are unwilling to make one. The action of the trial court, taken at the request of the accused, did him no harm and could not have done him any. When we reach this conclusion on a question involved in a case, our investigation of that question ceases. We are of opinion that where two or more felonies of the same character are charged in different counts of the same indictment, it is within the sound discretion of the trial court to quash the indictment as a whole or any count or counts thereof, or to compel an election on the part of the prosecutor as to what count or counts he will prosecute, having at all times due regard to the substantial rights of the accused and assuring to him a fair trial unembarrassed by confusion of issues or the necessity of defending two or more charges separated by time, place and circumstances.

In the instant case the trial court committed no error in compelling an election by the prosecutor.

[4] It is insisted by counsel for the accused that the trial court erred in overruling his demurrer to the third count of the indictment because it charges three distinct felonies in one count.

We do not regard this question as an open one in this State. The indictment charges but a single transaction, one act of endeavor on the part of the accused, and that was the entry on the books of the bank. There may have been one or a dozen intents with which the act was done, but that did not increase the number of offenses charged. As all of the intents were charged in a single count, in the conjunctive, only one offense was charged, but the proof of the entry, with any one of the intents, would be sufficient to convict.

*Angel* v. *Commonwealth*, 2 Va. Cas. 231, was an indictment under the Virginia maiming act which annexes the penalty to certain acts when done with intent to maim, disfigure, disable *or* kill. The indictment charged the doing of the act with intent to maim, disfigure, disable *and* kill. It was held that the indictment was in proper form, and, although all the intents were laid, the proof of any one of them was sufficient to support a conviction.

Under a statute making it a felony for any person to falsely make, forge, counterfeit or alter, *or* procure to be made, forged, counterfeited or altered, *or* willingly act or assist in false making, forging, counterfeiting or altering any coin, etc., an indictment charging that the accused certain coin did falsely make, etc., *and* did cause and procure to be falsely made, etc., *and* did willingly act, etc., was held not to be bad for duplicity. *Rasnick* v. *Commonwealth*, 2 Va. Cas. 356.

So under a statute making it unlawful to play in a public place at any game *or* to bet on sides or hands of such as did play, it was held that an indictment charging a defendant with playing in a public place *and* betting (in the conjunctive) ought not to be quashed for duplicity.

All of these cases are reviewed in *Leath* v. *Common-*

*wealth,* 32 Gratt. (73 Va.) 873, and approved.   The last mentioned case arose under a statute making it a penal offense for anyone to keep or exhibit certain enumerated tables *or tables of like kind.*   The indictment charged that the defendant did keep and exhibit all of the tables enumerated in the statute "*and* tables of the like kind; the said tables of the like kind being under denominations to the grand jurors aforesaid unknown."   The count was assailed for duplicity, but was held good.   In the course of the opinion it is said:  "The count pursues the language of the statute in describing the enumerated games or tables except they substituted the conjunctive 'and' for the disjunctive 'or,' and in so doing it charges really but one offense, to-wit, the keeping and exhibiting all the games or tables named at the same time and place, and said count is supported by proof of the keeping or exhibiting of any one of the games or tables mentioned, and on conviction there would be but one fine and one term of imprisonment.   The pleader might have inserted separate counts, charging the keeping or exhibiting of each game or table at a different time and place, and, if warranted by the proof, the defendant might have been convicted of the several offenses committed on different occasions, and fined and imprisoned for each offense.

"The precedents justify the mode of counting adopted in the present instance.

[5]  " 'If a statute,' says Bishop, 'makes it a crime to do this, or that, or that,' mentioning several things disjunctively, 'the indictment may, indeed, as a general rule, embrace the whole in a single count; but it must use the conjunctive "and" where "or" occurs in the statute, else it will be defective as being uncertain.' 1 Bishop Crim. Pro. section 334."

In *Benton* v. *Commonwealth,* 91 Va. 782, 21 S. E. 495,

it was held that "housebreaking with intent to commit larceny, and grand larceny, are distinctive offenses, and to each is affixed its own penalty, but they may be, and often are, one continued act, and may be charged in the same count of an indictment. Upon such count the accused may be found guilty of either or both offenses, but there can be only one penalty imposed. If it is desired to punish for both offenses, in a case of this kind, a separate count for larceny must be inserted in the indictment. If there is a conviction generally, or of the grand larceny only, and it is submitted to, in either case, this is a bar to further prosecution."

In the instant case there was but one transaction, but one overt act on the part of the accused, and that was the making of the entry, and if the three different intents charged in the third count had been severally charged in separate counts, or there had been a separate indictment for each, a conviction or acquittal on either would have barred a prosecution on the other two.

Much reliance was placed by counsel for the accused on *State* v. *Hudson*, 93 W. Va. 435, 117 S. E. 122, but no question of intent was there involved, and the statute there considered was very different from that in the instant case. If, however, the case could be considered in point, we would follow our own precedents.

[6] Having taken the view that only one offense is charged in the third count, we have not deemed it necessary to discuss the subject of duplicity, nor whether the defense of duplicity is any longer available in a criminal case. It has been held in West Virginia, upon a statute very similar to ours, to be no longer available. *State* v. *Jarrell*, 76 W. Va. 263, 85 S. E. 525. In Beale's Crim. Pl. & Pr. section 108, it is said: "Even if a demurrer or motion to quash is seasonably interposed, an election by the prosecuting attorney to proceed upon one charge

only cures the defect," citing *Stamper* v. *Commonwealth*, 102 Ky. 33, 42 S. W. 915; *Commonwealth* v. *Holmes*, 119 Mass. 195.

[7] It is insisted by counsel for the accused that there can be no conviction under the third count because there has been no false entry. The count charges that the accused did make a false and fraudulent entry on the ledger account of the accused in the Mechanics Savings Bank, with intent to conceal the true state of his accounts at the bank, and to defraud the said bank, and to assist him to obtain money to which he was not legally entitled.

Section 4457 of the Code, under which the conviction was had, reads as follows:

"If any officer or clerk of any bank or joint stock company make, alter, or omit to make any entry in any account kept in such bank, or by such company, with intent, in so doing, to conceal the true state of such account, or to defraud the said bank or company, or to enable or assist any person to obtain money to which he was not entitled, such officer or clerk shall be confined in the penitentiary not less than two nor more than ten years."

The accused cannot be convicted unless the evidence brings him within the offense charged in the indictment. Not only must the statute create an offense, but the indictment must charge the very offense for which a conviction is asked. What the statute condemns, as applied to the instant case, is the making of *any entry* in any account kept in the bank, with intent, etc. But the indictment goes further than the statute and charges that the accused made a *false and fraudulent* entry in the ledger account of the accused with the bank, with intent, etc. If, in these circumstances, it is necessary for the Commonwealth to prove not only the

entry charged, but that it was a false entry, then it is insisted for the accused that the entry actually made spoke the truth, and that such an entry, however fraudulent the transaction may be that it represents, is not a false entry and hence there can be no conviction. This view was pressed on us with great force and earnestness, and many authorities cited and quoted from. Among them *Dow* v. *U. S.*, 82 Fed. 904, 27 C. C. A. 140; *Twining* v. *U. S.*, 141 Fed. 41, 72 C. C. A. 529; *U. S.* v. *Young* (D. C.), 128 Fed. 113; *Coffin* v. *U. S.*, 156 U. S. 432, 15 Sup. St. 394, 39 L. Ed. 481; *Id.* 162 U. S. 664, 16 Sup. Ct. 943, 40 L. Ed. 1109; *Graves* v. *U. S.*, 165 U. S. 324, 17 Sup. Ct. 393, 41 L. Ed. 732. All of these cases construe the Federal statute against false entries in books of national banks. The Federal statute provides that "every president, director   *   *   * or agent   *   *   * who makes any false entry in any book   *   *   *   with intent to injure or defraud   *   *   * shall be imprisoned not less than five years nor more than ten years." Section 5209 Federal statutes (U. S. Comp. St. section 9772). The cases last above cited hold that the entry is not a false entry, if it speaks the truth, even though the transaction it records be unauthorized or fraudulent.

In *Coffin* v. *U. S.*, 156 U. S. 432, 463, 15 S. Ct. 394, 406 (39 L. Ed. 481), it is said: "We think the language used must have tended to confuse the jury and leave upon their minds the impression that if the transaction represented by the entry actually occurred, but amounted to a misapplication, then its entry exactly as it occurred constituted 'a false entry;' in other words, that an entry would be false, though it faithfully described an actual occurrence, unless the transaction which it represented involved full and fair value for the bank. The thought this conveyed implied that the

truthful entry of a fraudulent transaction constitutes a false entry within the meaning of the statute. We think it is clear that the making of a false entry is a concrete offense which is not committed where the transaction entered actually took place and is entered exactly as it occurred."

The Virginia statute, however, is not directed against *false* entries, but against *any* entry made with intent to conceal or, etc. If we strike from the indictment the words "false and fraudulent," the indictment will be practically in the language of the statute except that it gives the particulars of the transaction and specifies conjunctively the three intents mentioned in the statute disjunctively. It remains to enquire, can the words "false and fraudulent" be disregarded as surplusage?

[8] It is elementary that what need not be proved need not be alleged, but sometimes, as in the instant case, the pleader goes beyond what is necessary and alleges something that it was not necessary to allege and the result is that he must prove what he has alleged unless the unnecessary allegation can be rejected as surplusage. But what is surplusage? This is a question it is often difficult to answer, and it would be dangerous to attempt to define it. Text writers and cases generally agree that words that are descriptive of concrete things or persons are, as a rule, not surplusage and must be proved as laid, but beyond this we have found no definite rule for our guidance. We have found some efforts to state a rule, but usually either they will not stand the test of adjudged cases, or are too general to be of practical value. For example, in the brief of the Attorney-General there is this statement taken from 10 Encl. Pl. & Pr. 486:

"Where an indictment charges an offense, in the language of the statute, the addition of averments which

are not required by statute will not affect the validity of the charge, but may be rejected as surplusage, provided they do not take the case out of the statute."

But we know that if a horse is described as a white horse it must be proved to be white. The word "white" cannot be rejected as surplusage, and yet the case would not be taken out of the statute by treating it as surplusage.

In 14 R. C. L. 191, without defining surplusage, it is said that "a fact may be rejected as surplusage if it be merely in aggravation so that it may be stricken out and yet leave the offense fully described."

In 10 Encl. Pl. & Pr. 530, it is said: "Consistently with maxim *utile per inutile non vitiatur*, an allegation which may be wholly stricken out and still leave the count a perfect one may be rejected as surplusage if it is not descriptive of the offense. But as a general rule no allegation, even though it be one which there was no necessity to make, can be rejected as surplusage if it is descriptive of the identity of what it is legally essential to charge."

In Wharton's Crim. Ev. (10th ed.), 366, quoting from the opinion of Judge Story in *U. S.* v. *Howard*, 3 Sumn. 14, Fed. Cas. No. 15, 403, it is said: "But no allegation, whether it be necessary or unnecessary, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment, can ever be rejected as surplusage."

Bishop, after discussing the doctrine that mere surplusage does not vitiate an otherwise good indictment, says: "A needless adjective, prefixed to an essential noun, being descriptive of what cannot be rejected, must be proved also; as, if the indictment is for malicious mischief to 'white-oak' trees, or for larceny of a horse described by its sex or color or brand, these par-

ticulars of the things, wholly unnecessary to be stated, must be proved, or the variance will be fatal." 1 Bishop's Cr. Pro. (4th ed.), section 486, page 304.

[9] Beale probably gives the more accurate statement of the law when he says that if a single adjective *describes or qualifies* a necessary part of the indictment it cannot be rejected as surplusage. In Beale's Cr. Pl. & Pr. section 112, it is said:

"When a material allegation is made unnecessarily precise by a too particular description, the descriptive averment cannot be separated and rejected, but must be proved as laid. Thus where a sheet was described as a woolen sheet, though the statement of material was unnecessary, the epithet must be proved to procure a conviction; so where a horse was needlessly described as a white horse; logs as marked with a certain brand; and a third party as 'of Worcester,' or as a widow. So if money is needlessly described, the proof must correspond to the description.

"Whether an unnecessary allegation may be rejected as surplusage or must be proved as laid is not always easy to determine. If the allegation is an independent clause, it may always be rejected; if it is an adjectival phrase, or, at any rate, if it is a single adjective, and describes or qualifies a necessary part of the indictment, it cannot be separated from the word it modifies. It may therefore depend upon the mere form of statement whether the allegation may be rejected. Thus, if a horse is described as a white horse, it must be proved so; if the indictment names a horse which is white, the descriptive clause may be rejected. The reason for insisting on proof of the description is that otherwise the defendant would be misled to his harm; though the same reason would in many cases perhaps require proof of allegations rejected under the rule as surplusage."

Decided cases on the subject are numerous, and, outside of descriptive allegations, are generally rested on their own peculiar facts and circumstances.  Our own cases throw little light on the subject except a growing tendency to reject mere matters of form where no injury could have resulted therefrom to the accused.  While recognizing the fact that the accused has no right to insist on mere technical objections that do not affect his material rights, we have been very zealous to secure to him a fair and impartial trial on the merits of his case.  We have required the prosecuting attorney to be fair in his conduct to the accused and his witness and in his argument before the jury; that the presiding judge shall not invade the province of the jury in commenting upon the weight of the evidence or credibility of the witnesses, and that the jury shall be impartial in their consideration of the case and in rendering their verdict.  Whatever may affect the rights of the accused to a fair and impartial trial on the merits we guard with jealous care. The Virginia cases dealing with variance and surplusage are cited in the margin.*

Outside of Virginia, as stated, the decisions are numerous, and while no definite rule has been formulated for testing what is and what is not surplusage, and what must be proved in order to avoid a fatal variance, we find it frequently stated that descriptive matter must be proved as alleged, but when we examine the cases they generally refer to description of concrete things or persons.  We give below some of the cases that take a more extended view.

---

*Commonwealth* v. *Bennett,* 2 Va. Cas. 235; *Derieux* v. *Commonwealth,* 2 Va. Cas. 379; *Commonwealth* v. *Butcher,* 4 Gratt. 544; *Stevens* v. *Commonwealth,* 4 Leigh, 683; *Bell* v. *Commonwealth,* 8 Gratt. 600; *Lavier* v. *Commonwealth,* 10 Gratt. 708; *Wright* v. *Commonwealth,* 109 Va. 847; *Shiflett* v. *Com.,* 114 Va. 876; *Cochran* v. *Com.,* 122 Va. 801.

In *Fulford* v. *State*, 50 Ga. 591, on an indictment for assault with intent to kill A, it was charged that the acts done by the prisoner were done "by pushing, striking, assault and threatening C, "and it was held that the quoted words could not be rejected as surplusage.

In *Raymond* v. *People*, 9 Ill. App. 344, it was held that where an information not only charged an offense, but set out the particular manner in which it was committed, the particular matter could not be rejected as surplusage.

In several cases it has been held that no allegation which is descriptive of what it is legally necessary to charge in an indictment can be rejected as surplusage. *People* v. *Myers*, 20 Cal. 76; *Commonwealth* v. *Garland*, 3 Metc. (60 Ky.) 478; and in *State* v. *Flynn*, 76 N. J. L. 473, 72 Atl. 296, Chief Justice Pitney, speaking for the court, quotes with approval the statement in 22 Cyc. 370, that "allegations which, though unnecessary, are descriptive of the identity of that which it is legally essential to charge cannot be rejected as surplusage."

In *Goodloe* v. *State*, 82 Ohio St. 365, 92 N. E. 491, 30 L. R. A. (N. S.) 164, 19 Ann. Cas. 893, the accused was indicted for killing "Percy Stuckey alias Frank McCormick," and the proof was that the person killed was commonly known as Frank McCormick, and this was held not sufficient to sustain the charge in the indictment unless it was also shown that Frank McCormick, the person killed, and Percy Stuckey, were one and the same person.

In *Melton* v. *State*, 58 Tex. Cr. R. 88, 124 S. W. 911, the statute forbade betting at a game of cards, but the indictment charged that the defendant *bet money* at a game of cards. The court said: "But the pleader saw proper to charge specifically that money was bet. This was a descriptive averment and necessary to be proved."

Probably other courts would not have gone so far as some of the cases we have cited, but we are satisfied that "descriptive allegations" are not confined to concrete things or persons, and have a more extended application. If the unnecessary word or words inserted in the indictment describe, limit or qualify the words which it was necessary to insert therein, then they are descriptive of the offense charged in the indictment and cannot be rejected as surplusage. The offense as charged must be proved.

[10] In the instant case the Commonwealth elected to restrict the prosecution to a "false and fraudulent" entry, and was bound to sustain the allegation by proof. Whether or not the evidence was sufficient for this purpose was not fairly submitted to the jury. They may have thought that it was not necessary for the Commonwealth to prove that the entry was "false and fraudulent."

[11] Instruction 1 given for the Commonwealth* follows the language of the statute and directs a verdict of guilty, and ignores the fact that there could be no verdict of guilty unless the entry was false and fraudulent as charged in the indictment. The instruction would have been free from objection if the indictment had followed the statute, but not having done so, it was erroneous because it did not properly apply the evidence

---

*Instruction 1.—"The court instructs the jury that if they believe from the evidence in this case, beyond all reasonable doubt, that Norrell at the time was cashier of the bank and that he made the entry on the books of the bank whereby John Mitchell, Jr., the accused, was given credit on the books of the bank for the sum of nineteen thousand dollars, and that the said entry was made by the said Norrell under the order or by the direction of the said John Mitchell, Jr., the defendant; and that Mitchell was then president of said bank, and that said entry was made by said Norrell under the direction or order of said Mitchell with intent by said Mitchell in so doing feloniously to conceal the true state of his accounts with said bank, or with intent to defraud said bank, or to enable or assist the said Mitchell to obtain money to which he was not entitled, then the jury should find the accused guilty under this indictment."

to the charge in the indictment.   It directed a verdict of guilty whether the entry was true or false.

It is assigned as error that the trial court refused to grant instruction D tendered by the accused, and, in lieu thereof, gave instruction 10 tendered by the Commonwealth.   These instructions are copied in the margin.*

The accused attached great importance to that part of instruction D which declares that evidence of good character, may, of itself, be sufficient to raise a reasonable doubt and acquit him.   There is much authority of great weight to support the claim of the accused.   *Edgington* v. *United States*, 164 U. S. 361, 17 S. Ct. 72, 41 L. Ed. 467; *People* v. *Elliott*, 163 N. Y. 11, 57 N. E. 103; *People* v. *Bonier*, 179 N. Y. 315, 78 N. E. 226, 107 Am. St. 880; *Hanney* v. *Commonwealth*, 116 Pa. St. 322, 9 Atl. 339.   In *People* v. *Bonier, supra*, it is said: "What the defendant asked and should have had was an instruction that such evidence of itself might raise a reasonable doubt.   He did not get it.   The jury decided the case without knowing the law.   The effort to have them told what the law was upon a vital point met with a denial.   They went to the jury room not only uninformed, but, as they may have understood the words of the court, misinformed as to their power.   *   *   *   *   *   A presumption of injury conclusively arises whenever

*Instruction D.—"The court further instructs the jury that evidence of good character is highly important in every criminal case, particularly in cases where the question of the guilt or innocence of the accused turns upon the intent with which the act or acts charged against him were done; and, in such case, evidence of good character may, of itself, be sufficient to raise a reasonable doubt and acquit him."

Instruction 10.—"The court instructs the jury that if they have a doubt as to any material fact necessary to a conviction in this case, then evidence of the good character of the accused may resolve such doubt into a reasonable doubt, and if the jury have such a reasonable doubt as to any element of the offense charged necessary to a conviction, they should give the accused the benefit of such doubt and acquit him, but if, upon the whole evidence in the case, the jury believe that the accused is guilty beyond all reasonable doubt, then the jury should find the accused guilty."

it is apparent that the erroneous ruling may have affected the verdict."

[12] There are cases that held that a man's character may be shown to be so good as to overcome positive evidence of his connection with the crime, and cause the jury to believe that there was some mistake or error as to the positive evidence. There are men of that character, but there is a vast difference between reputation and character, and our chief means of ascertaining character is by evidence of general reputation. Few men know the characters of men accused of crime, but evidence of general reputation is received because of its tendency to show probable character. The limitations of human nature are such that we cannot prove character. There is only one being "to whom all hearts are open, all desires known, and from whom no secrets are hid." Without this information our knowledge of character is very limited.

There have been many decisions both on the admissibility of evidence of good character and on its weight. A number of them may be found in the note in 103 Am. St. 888, and following.

In 1 Wigmore on Ev. (1st ed.), section 56, it is said: "It was once thought that character could be appealed to in *capital cases* only. * * * * It is now well understood to be admissible upon *charges of all grades*, even of mere misdemeanors.

"It was also thought that character was receivable in *doubtful cases only*, to turn the balance of evidence: * * * But it is now understood to be admissible without any such limitation. The broad statement by some courts that a defendant's character in criminal cases is 'always admissible' negatives impliedly both the foregoing limitations. Whether, when admitted, it should be given weight except in a doubtful case, or

whether it may suffice of itself to create a doubt, is a mere question of the weight of evidence, with which the rules of admissibility have no concern."

The general concensus of opinion seems to be that the weight to be attached to evidence of good character is a matter solely for the jury. It is also generally conceded that good character is a substantive fact to be proved before the jury as any other fact, and in a number of cases it is said that the accused is entitled to have the benefit of this fact before the jury and considered by them while arriving at their conclusion as to whether or not there is a reasonable doubt as to the guilt of the accused; that the jury are not restricted to weighing such evidence to cases where otherwise there is a reasonable doubt as to the guilt of the accused, for in such case he would be entitled to a verdict of not guilty anyhow. In *State* v. *Keefe*, 54 Kan. 191, 205, 38 Pac. 302, 305, it is said that good character evidence "is to be considered by the jury in determining the guilt or innocence of the accused and weighed like any other fact. To say that such evidence must be cast aside if, from the other evidence alone, the jury are convinced of the guilt of the defendant is, in effect, to disregard such testimony entirely, for all that a defendant in a criminal case ever needs is evidence sufficient to raise a reasonable doubt as to his guilt. In determining whether there is or is not a reasonable doubt as to his guilt, the jury must place his previous good character, if shown by the testimony, in the scale, and weigh this along with all other facts and circumstances."

[13, 14, 15] This reasoning accords substantially with the holdings of this court. This court has several times refused to approve an instruction telling the jury that good character alone and of itself was sufficient to raise a reasonable doubt of the guilt of the accused. *Briggs* v. *Commonwealth*, 82 Va. 554; *Troutner* v. *Common-*

*wealth,* 135 Va. 750, 115 S. E. 693.   But it has also announced the doctrine that the weight to be given to evidence of good character is a matter for the determination of the jury in connection with the other facts proven in the case.   In *Crump* v. *Commonwealth,* 98 Va. 833, 23 S. E. 760, the trial court refused to instruct that "the character of the accused, good or bad, when proved, may always be received and weighed by them in favor of or against him, as the case may be," and, in lieu thereof, gave the following: "The character of a prisoner when proven, whether good or bad, is a fact to be considered by the jury, but its weight as affecting the guilt or innocence of a prisoner is a matter for the determination of the jury in connection with the other facts proven in the case."   This court held that there was no error in the instruction given by the trial court, saying: "The instruction, as amended, correctly stated the law, and was properly given to the jury.   We do not mean to say that the instruction as asked for was not correct.   It was in the words of the instruction given in *Briggs' Case,* 82 Va. 554, and approved by this court, but the amended instruction given by the court in this case wholly covered it and was so expressed as to prevent the jury from being misled, which was possible in the form in which it was asked."

We now reaffirm our approval of the amended instruction given by the trial court in *Crump's Case, supra,* as a correct statement of the law, and a sufficient statement of it so far as regards character evidence.

It follows from what we have said that we are of opinion that the trial court committed no error in refusing instruction D tendered by the accused, but that it erred in giving instruction 10 tendered by the Commonwealth.   Instruction 10 restricted the consideration of the character testimony to a doubtful case.

Furthermore, upon the hypothesis stated in the first part of instruction 10, the accused was entitled to a verdict of acquittal.   If the jury had a reasonable "doubt as to any material fact necessary to a conviction in this case, then" it was their duty to acquit him.   The instruction is also in conflict with instruction 7 given for the accused.   In any view of the case, the instruction may have misled the jury and this necessitates a reversal.

[16] It is · assigned as error that the trial court, over the objection of the accused, permitted a witness for the Commonwealth to be asked and to answer the following question:   "Will you state whether or not the effect of such entries made upon the books of the bank would be to conceal the true state of the account of John Mitchell, Jr., in the bank?"   To which the witness replied:   "Yes."   The question was a leading one put to a witness not shown to be an expert.   But whether expert or not, it called for the opinion of the witness upon what was practically the very issue to be tried by the jury, and not to what was disclosed by the books of the bank. He was asked as to the "effect" of such entries.   This was a question to be determined by the jury from the evidence in the case and not from the opinion of an adverse witness.   In *Thornton* v. *Commonwealth*, 113 Va. 736, 73 S. E. 481, the case was reversed solely on the ground that a very similar question was allowed to be asked an expert witness.

In the present state of the record we deem it unnecessary to pass upon the ruling of the trial court upon the instructions tendered by the accused and refused.

As the case has to be remanded for a new trial, we express no opinion upon the assignment of error that the verdict is contrary to the law and evidence.

For the errors hereinbefore pointed out the judg-

ment of the trial court will be reversed, the verdict of the jury set aside, and the case remanded for a new trial, not inconsistent with the views hereinbefore expressed.

*Reversed.*

PRENTIS, P., concurring:

I concur in the result in this case and in the opinion, except as to the conclusion that the words "false and fraudulent" in the indictment are not surplusage, and therefore must be proved. I think, on the contrary, that under the Virginia statute, which is quoted and construed, these words are mere surplusage which the Commonwealth is not required to prove. Several citations in the majority opinion, as well as the better reason, I think support this view.

It is apparently true that in describing concrete objects as the subjects of larceny, as in the "white horse" and "woolen blanket" cases, the prosecution should be held to prove the unnecessary facts alleged because otherwise the defendant might be taken by surprise. In cases like this, however, there can be no surprise because the alleged illegal entry is and must be identified and described with particularity in the indictment. So that, if the entry, the illegal intent and the effect are proved, the statutory crime is established.

Mr. Beale begins his treatment of the question with this language: "An indictment, otherwise sufficient, s not vitiated because it includes immaterial and unnecessary words; these are rejected as surplusage, and need not be proved;" and, after a number of illustrations which show the conflict of opinion, concludes thus: "On principle, it seems difficult to reconcile these cases with the general doctrine that an unnecessary and sep-

arable allegation may be rejected as surplusage." Beale's Cr. Pl. & Pr., sections 110-112.

In my view, the precedents which cannot be reconciled with this sound principle should be disregarded.

WEST, J., concurs with PRENTIS, P.