UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and AtLee
Argued at Richmond, Virginia


ROBERTO BRITO ARRATE

MEMORANDUM OPINION[*] BY
v.        Record No. 0518-18-2         JUDGE RICHARD Y. ATLEE, JR.
                                        FEBRUARY 12, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CAROLINE COUNTY
Sarah L. Deneke, Judge

Melissa E. Danjczek for appellant.

Rachel L. Yates, Assistant Attorney General (Mark. R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of Caroline County ("trial court") found

appellant Roberto Brito Arrate guilty of one count of credit card[1] forgery, in violation of Code

§ 18.2-193.  On appeal, Brito Arrate assigns numerous errors.[2]  Because only one assigned error,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We recognize that Brito Arrate argues that the card(s) at issue here do not fall within the definition of "credit card" under Code § 18.2-191.  While we occasionally refer to the cards as "credit cards" in this memorandum opinion for clarity, we make no ruling as to whether they, in fact, qualify as such under that definition.

[2] Brito Arrate argues the trial court erred as follows:

1)  there was no evidence whatever [sic] that Brito-Arrate falsely made or falsely embossed a purported credit card or uttered such a falsely made or falsely embossed credit card, no evidence that he signed a credit card, and no evidence that he forged a sales draft or cash advance/withdrawal draft or attempted to employ as true a forged draft knowing it to be forged;

regarding a variance between the crimes charged in the indictment and the evidence presented at trial, governs our resolution of this case, we do not address the additional assigned errors. See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64 (2006) (*en banc*) ("[A]n appellate court decides cases 'on the best and narrowest ground available.'" (quoting Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 531 (1991) (Stevens, J., concurring))). Because we find that the indictment failed to allege the conduct for which the trial court convicted Brito Arrate, we reverse.

## I. BACKGROUND

At a Love's Travel Stop in Caroline County, Brito Arrate presented a "Vanilla Mastercard," a prepaid card that can be used like a gift card but is not limited to one store, as payment for his purchase. The manager, Tiffany Sparks, swiped the card and entered the last four digits on the card in response to the card payment system's prompt. The system flagged the card as fraudulent, indicating that the account associated with the card's magnetic strip did not match the numbers listed on the front of the card. Sparks informed Brito Arrate that the card had

---

2) the gift cards in question did not meet the definition of a "credit card" for purposes of Va. Code § 18.2-193 because the gift cards didn't operate by means of "charging the account of the cardholder with a bank or any other person";

3) Brito-Arrate wasn't the "cardholder" of a credit card for purposes of Va. Code § 18.2-193 because he wasn't "the person named on the face of a credit card to whom or for whose benefit the credit card is issued by an issuer"; and

4) the indictment alleged only that Brito-Arrate had falsely made or falsely embossed a purported credit card, and did not allege that Brito-Arrate had uttered a falsely made or falsely embossed credit card or committed any of the offenses described in subsections 2 and 3 of the statute.

(Formatting edited for clarity.) We address only the final assignment of error as it controls our ruling in this case.

been designated fraudulent. Brito Arrate asked for the card back but Sparks refused the request. She informed him that she would call the police and could not return the card until they arrived. After hearing that Sparks would call the police, Brito Arrate reached across the counter in an unsuccessful attempt to grab the card. Sparks stepped back and picked up the store phone. Brito Arrate then fled.

Brito Arrate ran outside to a truck parked in the store's lot, stopped there for a moment, and then ran to a nearby fence. Sparks called her assistant manager, and they pursued Brito Arrate. They observed Brito Arrate throw something resembling credit or debit cards over the fence before returning to the truck and driving away. Sparks and the assistant manager were unable to catch him. They searched the spot by the fence and retrieved ten cards. Some were "Vanilla" Mastercards, others "Green Dot" Visas (another brand of pre-paid payment card), and finally, there was one Walmart gift card. Sparks, the assistant manager, and a deputy who arrived on the scene ran the cards through the card payment system. Of the ten, seven came up as fraudulent, and one (the Walmart gift card) could not be processed through that system.

A grand jury returned an indictment[3] charging that Brito Arrate "did unlawfully and feloniously commit credit card forgery with intent to defraud a purported issuer, a person or organization providing money, goods, services or anything else of value, or any other person, he falsely makes or falsely embosses a purported credit card, in violation of [Code] § 18.2-193." The indictment's language follows that of Code § 18.2-193(1)(a) regarding "mak[ing]" or "emboss[ing]," but failed to include the remainder of that subsection, which criminalizes

---

[3] The grand jury returned indictments for five counts of credit card forgery, but the trial court granted Brito Arrate's motion to strike four of those counts.

"utter[ing] such a [forged] credit card." The indictment also did not include language from subsections (b) or (c) of that statute.[4]

At trial, Brito Arrate's counsel moved to strike, noting that, *inter alia*, the Commonwealth failed to prove that he committed the crime charged in the indictment — falsely making or embossing the card. The trial court overruled the motion:

> The [C]ode section 18.2-193 is what is specified in the indictment as being the charging section. There's no reference to a specific subsection. And while I agree with [defense counsel] that the language of the indictment deals with making or embossing a credit card, the [C]ode section, itself, deals with making, embossing or uttering such a card, and I find that that covers the allegations in this particular case and the motion to strike is overruled.

The trial court ultimately convicted Brito Arrate and sentenced him to two years in prison, with one year, eleven months, and twenty days suspended for a period of three years. This appeal followed.

## II. ANALYSIS

Brito Arrate argues that the indictment did not encompass the conduct for which he was convicted. Specifically, the indictment upon which the trial court convicted Brito Arrate charged

---

[4] The other subsections of Code § 18.2-193(1) state that a person is guilty of credit card forgery if

> (b) He, not being the cardholder or a person authorized by him, with intent to defraud the issuer, or a person or organization providing money, goods, services or anything else of value, or any other person, signs a credit card; or

> (c) He, not being the cardholder or a person authorized by him, with intent to defraud the issuer, or a person or organization providing money, goods, services or anything else of value, or any other person, forges a sales draft or cash advance/withdrawal draft, or uses a credit card number of a card of which he is not the cardholder, or utters, or attempts to employ as true, such forged draft knowing it to be forged.

- 4 -

him with credit card forgery by "falsely mak[ing] or falsely emboss[ing] a purported credit card, in violation of [Code] § 18.2-193." The indictment's language includes only a portion of subsection (1)(a) of Code § 18.2-193. Crucially, it omits the language from that subsection most clearly applicable to Brito Arrate's conduct: "or utters such a credit card."

The trial court, in finding Brito Arrate guilty, noted that "[i]t is a fraudulent card. It was *uttered* by this individual in an attempt to defraud the store . . . ." (Emphasis added.) Furthermore, when overruling Brito Arrate's motion to strike, the trial court relied on the indictment's general citation to Code § 18.2-193, without including a specific subsection, in finding that it included not only making and embossing, but also uttering. Thus, it is clear from the trial court's statements that it found that Brito Arrate was guilty of uttering the forged card (although it did not expressly disclaim that the evidence proved making or embossing).

As a preliminary matter, we must consider the definitions of "uttering" and "making" a credit card.[5] Uttering is "an assertion by word or action that a[n instrument] known to be forged is good and valid." Goodwin v. Commonwealth, 64 Va. App. 322, 327 (2015) (quoting Bateman v. Commonwealth, 205 Va. 595, 600 (1964)).

Yet the indictment omitted the phrase "or utters such a credit card," solely charging Brito Arrate with making and embossing. Code § 18.2-193(2) defines making a credit card:

> A person falsely makes a credit card when he makes or draws, in whole or in part, a device or instrument which purports to be the credit card of a named issuer but which is not such a credit card

---

[5] The Commonwealth does not argue that the evidence was sufficient to prove Brito Arrate embossed the card, and thus appears to concede that it was not. Code § 18.2-193(3) defines embossing a credit card:

> A person falsely embosses a credit card when, without the authorization of the named issuer, he completes a credit card by adding any of the matter, other than the signature of the cardholder, which an issuer requires to appear on the credit card before it can be used by a cardholder.

because the issuer did not authorize the making or drawing, or alters a credit card which was validly issued.

The Commonwealth responds to the merits of Brito Arrate's assigned error with two arguments. First, it argues that the evidence was sufficient to show that Brito Arrate made the card here. Second, it argues that even if the evidence only proved that Brito Arrate uttered the fraudulent card, the failure to include that language in the indictment nonetheless would not amount to a fatal variance.

A. *The Evidence Failed to Show Brito Arrate Made the Card*

First, the Commonwealth claims that it proved Brito Arrate made the forged card. It argues that, because there was a discrepancy between the card number and the magnetic strip, the card must have been altered. Yet aside from Brito Arrate's possession of the card and knowledge that it was fraudulent, there is no evidence indicating that he was responsible for that alteration.

The Commonwealth relies on Fitzgerald v. Commonwealth, 227 Va. 171 (1984), for the proposition that possession of a forged instrument "is prima facie evidence that he either forged the instrument or procured it to be forged." Id. at 174 (emphasis omitted) (quoting Laird v. State, 406 So. 2d 35, 36 (Miss. 1981)). The Court explained in that case that "[s]uch a prima facie showing of guilt does not rise to the level of a conclusive presumption, and it may be rebutted, but it will warrant submission of the issue of guilt of forgery to the jury, and will support a verdict of guilty if the jury so finds." Id.

In Fitzgerald, the defendant was convicted for forgery of paper checks using a typewriter and a pen. The Commonwealth argues that this presumption should extend to credit card forgery. We disagree.

Forging a check and a credit card are not acts requiring equivalent skill or effort. Forging a credit card, at least as the card at issue here was altered, requires specialized equipment and

some technical skill to rewrite the magnetic strip on the back of the card. By contrast, forging a paper check requires nothing more than a pen. Accordingly, the inference presented in Fitzgerald is logical as applied to a check, because a fact-finder can reasonably infer that an average person would understand how to write fraudulent information on a piece of paper. The same cannot be said for credit cards.[6]

The Commonwealth presented no evidence that Brito Arrate possessed the tools or skill to forge a credit card, and relies solely upon his possession of the fraudulent card as evidence that he made it. Assuming without deciding that the presumption set forth in Fitzgerald does not unequivocally apply to credit card forgery, the evidence presented at trial was inadequate to show that Brito Arrate had "made" (or "embossed") any of the cards. The trial court found as much, expressly stating that Brito Arrate had uttered the card. Brito Arrate's mere possession of the card, and attempt to use it, alone is inadequate to show that he made or embossed the forged card as charged in the indictment.

### B. *There Was a Fatal Variance*

While the prosecution may have shown that Brito Arrate uttered the fraudulent card when he presented it to the convenience store cashier, the indictment failed to include that language. The Commonwealth nevertheless argues that the trial court correctly determined there was no fatal variance between the indictment and the conduct for which Brito Arrate was convicted. We disagree.

"The point of an indictment 'is to give an accused notice of the nature and character of the accusations against him in order that he can adequately prepare to defend against his

---

[6] Moreover, the defendant in Fitzgerald included his name on the false checks as payee and endorsed each with his signature, permitting a reasonable fact-finder to conclude that he was responsible for the forgery, as he was the person who stood to benefit from it. Here, any person in possession of the fraudulent card could have, assuming the card received a lower level of scrutiny than Brito Arrate faced, redeemed it.

accuser.'" Purvy v. Commonwealth, 59 Va. App. 260, 265-66 (2011) (quoting King v. Commonwealth, 40 Va. App. 193, 198 (2003)). "In short, the 'offense *as charged* must be proved.'" Id. at 267 (quoting Mitchell v. Commonwealth, 141 Va. 541, 560 (1925)). "[N]otice to the accused of the offense charged against him is the rockbed requirement which insures the accused a fair and impartial trial on the merits." Id. (quoting Hairston v. Commonwealth, 2 Va. App. 211, 214 (1986)). Thus, a variance between the conduct charged in the indictment and proven at trial is fatal "when the proof is different from and irrelevant to the crime defined in the indictment and is, therefore, insufficient to prove the commission of the crime charged." Id. (quoting Stokes v. Commonwealth, 49 Va. App. 401, 406 (2007)).

In Purvy, this Court found a fatal variance where the indictments charged the defendant with failing to register or reregister as a violent sex offender in violation of Code § 18.2-472.1, while he was convicted for knowingly providing false information on his reregistration forms. Id. As in this case, the same statute contained both of the crimes for which Purvy was charged and convicted. This Court acknowledged that "an indictment citing a criminal statute incorporates its contents by reference." Id. at 261; see also Code § 19.2-220; Rule 3A:6(a). Yet it cautioned that "when the descriptive text of an indictment narrows the factual allegation, it limits the scope of the incorporation." Id. Because the indictment included additional language that narrowed the scope of the crime charged from the broader statutory reference, and the nature of those crimes was distinct, the Court held that a fatal variance existed. Id. at 269.

The Supreme Court has previously held that possession of stolen credit cards is distinct from credit card theft. In Wilder v. Commonwealth, 217 Va. 145 (1976), the Court held that an indictment charging that the defendant "did feloniously and unlawfully have *in his possession* two or more stolen credit cards" under Code § 18.1-125.3 (now Code § 18.2-192) did not encompass "taking, obtaining, withholding or receiving" under subsection (1)(a) because "mere

- 8 -

possession of a stolen credit card is not sufficient to state the offense of credit card theft." Id. at 147 (emphasis added). Although a defendant may acquire possession of a card through "taking, obtaining, withholding or receiving," the subsection deals with the "[m]anner in which possession is acquired and not with possession alone." Id. Wilder differs from this case because there, mere possession of a stolen card was not, in fact, a criminal act, while the conduct charged in the indictment here is. As such, the indictment in Wilder was unable to be rescued by amendment. Id. at 148; see also Scott v. Commonwealth, 292 Va. 380, 384 (2016). Here, however, there was no attempt to amend the indictment, so that distinction is not at issue. Wilder is nonetheless instructive because it highlights that possession and theft of a credit card, while related, are distinct, and the former does not amount to the latter. Similarly, uttering and making a forged card — particularly when the only evidence of the latter crime is the defendant's possession of the card — are distinct crimes requiring different acts and proof thereof.

Here, the inclusion of the additional language narrowed the scope of the indictment so that it no longer incorporated the remainder of Code § 18.2-193 by reference. The crimes of making and uttering a credit card are distinct. "False making involves creating a new thing which purports to be a credit card, where the creation is not authorized by the purported issuer; false making also occurs when one alters a validly issued, existing card." 7 Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses 147 (2018-2019 ed.). By contrast, "uttering is presentation of a forged card, with intent to defraud, misrepresenting it as genuine in an attempt to obtain thereby some benefit." Id. One could make a fraudulent credit card and never utter it. Or, as we see here, the evidence could show that one uttered a forged card without proving that that individual made it. Because these crimes, and the elements that comprise them, are distinct, the evidence offered at trial was "different from and irrelevant to the crime[s]

defined in the indictment," and thus failed to prove the crimes charged. Purvy, 59 Va. App. at 267.

As the Court noted in Purvy, the Commonwealth could "easily [have] avoided [this outcome] by broadening the descriptive text of an indictment or by making disjunctive factual allegations." Id. Had the indictment been so broad as to encompass the entirety of Code § 18.2-193, Brito Arrate could have sought a bill of particulars in order to determine the specific conduct the Commonwealth intended to prove. By including the narrowing language of making and embossing, and excluding any mention of "uttering," the indictment failed to provide adequate notice to Brito Arrate that the Commonwealth intended to show he uttered the forged card. As such, we hold a fatal variance existed between the indictment and the conduct for which the trial court convicted Brito Arrate.

III. CONCLUSION

We find the trial court erred in ruling that the Commonwealth proved Brito Arrate guilty of the conduct charged in the indictment, as there was no evidence that Brito Arrate either made or embossed the card, and the indictment failed to charge Brito Arrate with uttering. Accordingly, we reverse Brito Arrate's conviction.

Reversed.

- 10 -