# Staunton

### BERNARD JAMES v. COMMONWEALTH OF VIRGINIA.

September 5, 1951.

Record No. 3862.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*John B. Boatwright,* for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General,* and *Frederick T. Gray, Assistant Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Bernard James, sometimes hereinafter referred to as the defendant, has been tried and convicted by a jury of receiving stolen property of a greater value than $50, knowing the same to have been stolen, and his punishment fixed at one year in the penitentiary. Code of Virginia, 1950, section 18-169. He asks us to set aside his conviction on the several grounds set out in his "Notice of Appeal and Assignment of Error." Rule of Court 5:1, section 4. His brief fails to contain the required statement of errors assigned, Rule of Court 5:12, section 1 (b), but it is therein argued that the trial court erred in the admission of improper evidence, in refusing to grant certain instructions and in refusing to set aside the verdict of the jury for insufficiency of the evidence.

The material evidence of the Commonwealth was substantially as follows: The storehouse of Houston Cabell, near New Canton, in Buckingham county, Virginia, was broken into sometime between midnight of September 23, 1950, and three a. m. of the following morning. $240 in United States currency, contained in a cigar box, and a 38 calibre pistol were stolen therefrom. Cabell promptly reported the housebreaking and larceny to H. B. Adams, the sheriff of Buckingham county. On September 30, 1950, Sheriff Adams, without a warrant, arrested Perry Green, 18 years of age, and Bernard James, 20 years of age, near New Canton, on a passenger bus bound for Richmond, Virginia. Green, as he got off the bus, took a "roll of money"

out of his pocket and threw $74 in paper money on his seat in the bus. Asked why he threw the money away, he said, that it did not belong to him. Asked then about the robbery of Cabell's store, Green told the sheriff, in the presence of James, that prior to September 23rd, he and James had arranged to break into the store that night, but James did not show up so he broke into the store himself and robbed it; that sometime during the following Sunday morning, he went to the home of James and both of them went into the woods to divide the money; and that he gave James $60, which was less than half of the amount stolen.

The sheriff handcuffed James and Green together, and took them in his automobile to Cabell's store. There it was found that James had $43 or $44 in paper bills and silver on his person, and Green some silver coins.

Sheriff Adams testified that at the Cabell store he further questioned the handcuffed youths without advising them of their legal rights or warning them that their statements might be used against them. Present were two of his deputies, Winfrey Taylor and D. V. Coleman, and also Houston Cabell and Laura James, mother of the defendant. James then admitted to the sheriff that he and Green had planned to break into the store together; that he failed to meet Green at a certain oak tree as planned; and that he accepted $60 from Green on the following day, knowing the same to have been stolen from Cabell's store. He said that he did not notify Cabell that he had the stolen money because he was afraid the latter would shoot him.

There was no evidence of force, threats, intimidation, inducement, promise of reward, or hope thereof held out by the sheriff or his deputies in the examination of Green and James, or that the statements of the latter were other than purely voluntary.

Winfrey Taylor, one of the sheriff's deputies, testified that he was present at Cabell's store on September 30th, when Adams questioned Green and James. He said he heard most of what was said, and corroborated the testimony of Adams as to the admissions of Green and James.

After his arrest, Green took Adams into the woods near the former's home and there produced the cigar box which had contained the money stolen from Cabell's store. In corroboration, Louise Jones, mother of Green, said that on Sunday morning,

September 30th, "about half way between breakfast and dinner" James came to her house and he and Green went together into the woods in the direction where the sheriff found the empty cigar box.

Green, during his confinement in jail, made the statement that James had entered the store on the night of September 23rd with him. Upon his trial, he pleaded guilty to breaking into the store and stealing the money, and said that someone was with him at the time of the housebreaking.

James, in his defense, denied all connection with the crime, saying he knew nothing of its commission and received none of the stolen money. He admitted that the sheriff questioned him at length; but denied making any admission of his guilt. He explained that the money on his person when arrested consisted of $15, which his mother had given him and $30 or more of his own. He further said that he was "hard of hearing," and "was not sure what Perry Green told the sheriff about breaking in Cabell's store." He claimed that he was not in the vicinity of Cabell's store the night of September 23rd-24th, and that he taught a class in Sunday school on the morning of September 24th, and did not see Green on that day. He stated that he did not know Green was going on the bus on the 30th until he was ready to get on it himself.

Several witnesses testified that James was not in the vicinity of the Cabell store on the night in question. Three witnesses testified that the defendant was a young man of excellent character and reputation. Laura James said her son was "rather deaf;" that she gave him $15 to purchase some goods for her in Richmond; and that she did not hear him tell the sheriff "anything at all about having gotten any money from Perry Green at any time."

In the trial court, the defendant objected to the evidence of the sheriff and his deputy as to the statements made by Green on the ground that they were made while Green was under arrest and without advice as to his legal rights. In his brief, he contends that the statements of Green, although made in his presence, were hearsay evidence and inadmissible, because he was so hard of hearing and the usual rule should not apply. The latter objection not being made in the court below cannot be considered for the first time on appeal. Rule of Court 1:8; *Warren* v. *Warren,* 93 Va. 73, 24 S. E. 913; *Jackson* v. *Chesa-*

*peake, etc., R. Co.,* 179 Va. 642, 20 S. E. (2d) 489. However, there is no merit in either contention. The statements of Perry Green and the confession of Bernard James were voluntarily made. There is not a particle of evidence to the contrary.

It is generally held that the mere fact that a confession has been made, while under arrest, to a police officer, sheriff, or public prosecutor does not render it inadmissible, in the absence of any inducement, threat, or promise of reward or hope thereof held out by persons in authority. Vol. 2, Digest of Va. & W. Va. Rep., Michie, Confessions, section 1, *et seq.* and cases cited; Vol. 6, Va. & W. Va. Digest, West, Criminal Law, section 517, *et seq.;* 7 M. J., Evidence, section 227, page 606; 20 Am. Jur., Evidence, section 498, page 431; 22 C. J. S., Criminal Law, section 822, page 1441.

It is also the general rule that when a statement tending to incriminate one accused of committing a crime is made in his presence and hearing and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal proceeding against him, as evidence of his acquiescence in its truth. *Owens v. Commonwealth,* 186 Va. 689, 698, 43 S. E. (2d) 895; 7 M. J., Evidence, section 231, page 611; 20 Am. Jur., Evidence, section 567, page 479; 31 C. J. S., Evidence, section 294, page 1057.

In his notice of appeal, the defendant assigns error to the refusal of the court to give instructions "E," "H," and "I." In his brief, error is assigned to the refusal to give "E," "F," and "J." No such instructions as "H" and "I" appear in the original or printed record. In both the original and printed records, there are two instructions numbered "F," one with reference to burden of proof was given without exception; the other relating to evidence of good character was refused.

However, it is manifest that the defendant intended to rely upon the refusal of the court to give instruction "E," and instructions "F" and "J," the latter two relating to evidence of good character, as denominated in the printed record.*

---

* E. "The Court instructs the jury that altho they may believe from the evidence that the witness Green, made the alleged confession to the Sheriff, Adams, and other statements as to the guilt of James, as to the charge against him in this case, such statements are not evidence against the defendant James."

F. "The Court instructs the jury that evidence of character and reputation, whether good or bad, is a matter for them to consider; and that evidence of good

■ What we have already said about the admissibility of the statements of Green as to the guilt of James disposes of the objection to instruction "E."

■ Instruction "F" improperly told the jury "that evidence of good character is *highly important* if the case is one of reasonable doubt, and good character, should make it preponderate in favor of the accused." (Emphasis added).

The weight to be attached to evidence of good character is a matter solely for the determination of the jury in arriving at their conclusion as to whether or not there is a reasonable doubt of the guilt of the accused in view of all the other facts and circumstances proven in the case. Accordingly, we have repeatedly approved the following instruction: .

"The character of a prisoner, when proven, whether good or bad, is a fact to be considered by the jury, but its weight as affecting the guilt or innocence of a prisoner is a matter for the determination of the jury, in connection with the other facts proven in the case." *Crump* v. *Commonwealth,* 98 Va. 833, 835, 23 S. E. 760; *Mitchell* v. *Commonwealth,* 141 Va. 541, 564, 127 S. E. 368; *Owens* v. *Commonwealth, supra,* at page 708; *Randolph* v. *Commonwealth,* 190 Va. 256, 266, 56 S. E. (2d) 226.

The error alleged in the refusal to give instruction "J" was not properly assigned.

Rule of Court 5:1, section 4 provides as follows:

"No appeal shall be allowed unless, prior to the expiration of sixty days after final judgment, counsel files with the clerk notice of appeal and assignments of error. Within fourteen days thereafter counsel for appellee shall file with the clerk his assignments of cross-error, if any. *Only errors so assigned will be noticed by this court.*" (Italics added).

■ However, if the assignment had been properly made, the refusal of the court to give it was not reversible error. In the first place, it rather imperfectly states a rule of law. It is

character is highly important if the case is one of reasonable doubt, and good character, should make it preponderate in favor of the accused."

J. "The Court instructs the jury that while the Commonwealth cannot on its own motions introduce evidence as to the character and reputation of the accused, that if the accused does introduce such evidence as to his character and reputation, then the Commonwealth, may if it can, introduce evidence to rebut this evidence of good character.

"And the Court further instructs the jury that evidence of character and reputation, whether good or bad is a matter for them to consider along with the other evidence in this case."

argumentative and implies that the failure of the Commonwealth to introduce evidence of bad character should be used against the Commonwealth, whereas, in fact, the Commonwealth had a right to rely upon the strength of its other evidence. In the second place, it was not essential for the jury to be told that evidence of good character was a matter for their consideration, because if it had not been proper for their consideration its presentation would not have been allowed.

The second paragraph of the instruction, in its abbreviated form, told the jury that they should ''consider'' the evidence of good character; but it failed to advise them that its weight was to be determined by them, in view of the other facts and circumstances proven, in arriving at their conclusion as to whether or not there was a reasonable doubt of the guilt of the accused. *Mitchell* v. *Commonwealth,* 141 Va. 541, at page 563.

The record does not disclose that any other instructions on the subject of good character were tendered to the court and refused by it. The character of the defendant was not a fundamental issue and did not go to the gist of the case. It was not incumbent, therefore, on the court, unasked, to instruct the jury upon that subject.

The jury apparently gave defendant's character consideration along with the other facts proven, since they fixed his punishment at the minimum prescribed by law.

Under the circumstances stated, the evidence was clearly ample to support the verdict of the jury. The credibility of the witnesses was a question for the jury, and they have found against the defendant. Much of his evidence went to show that he was not physically present when the storehouse was entered and the money stolen. However, his presence, at that time, does not go to the gist of the offense charged against him, that is, receiving stolen property, knowing the same to have been stolen. The statements of Green, the testimony of Sheriff Adams as to the conduct and confession of James, and the attendant circumstances force the conclusion that James was guilty of the offense charged.

We find no error in the proceeding and for the reasons noted, the judgment of the trial court is affirmed.

*Affirmed.*