# Richmond

## Alvania Mendoza v. Commonwealth of Virginia.

April 28, 1958.

Record No. 4782.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*Louis B. Fine,* for the plaintiff in error.

*Thomas M. Miller, Assistant Attorney General (A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

HUDGINS, C. J., delivered the opinion of the court.

[■] This writ of error brings under review a verdict and judgment sentencing Alvania Mendoza, hereinafter designated the accused, to three years confinement in the penitentiary for producing an abortion on Villis Lee Green.

The accused's first contention is that the lower court committed reversible error in refusing to strike the evidence or to set aside the verdict on the ground that the Commonwealth failed to prove the *corpus delicti.*

Villis Lee Green, a married woman, died on August 22, 1956. Her body was exhumed on August 29, 1956, and an autopsy performed by Doctors Charles O. Barclay, Jr. and Robert J. Faulconer. Dr. Barclay, Medical Examiner for the city of Norfolk, testified that he concluded from the examination of the body that she had been pregnant and "died from septicema resulting from a septic criminal abortion." Dr. Faulconer testified that he and Dr. Barclay made a complete and thorough autopsy of Mrs. Green and found the uterus enlarged; that there were tissues or cells on the walls of the womb that are found with afterbirth; that the cells were well preserved "indicating they were alive at the time of the patient's demise," and that she died from septic abortion.

Joseph Green, husband of the decedent, testified that prior to August 21, 1956, his wife's health was good; that on that day, she complained of severe pain and bleeding; that he, at her request, called on the accused. He said, "I asked her [the accused] if she did any work on my wife, Villis, and she didn't know her name and when I told her Kate she knowed her and I told her my wife was having a lot of pain and I would like for her to come to see her to see what she could do for her, and she told me that she had—she was three months gone and she was going to have a lot of pain anyhow, and for me to go to the drugstore and get some medicine, called something she wrote down, and she gave me $1.10 to get it." The accused also told this witness to see a Dr. Burke, whose name and address she wrote on a slip of paper that was filed as an exhibit and

reads as follows: "838 Church Street upstairs, Dr. Burke, phone number Madison 23403." Green bought the medicine and asked Dr. Burke to call on his wife, which he did. Dr. Burke told Green to clean his wife's bed which was very bloody. In doing so, he found a fetus, said to be about three months old, that he threw in the commode.

After the doctors reported their conclusions from their examination of decedent's body, detective D. C. Steppe, officer Neighbors, Reid W. Spencer, Assistant Commonwealth's Attorney, and decedent's husband went to the home of the accused with a search warrant and a warrant for her arrest. She was in the back of the house peeling an apple. She jumped up from a sitting position and put her hands behind her. Spencer caught hold of her arm and Steppe caught the other arm and took from her hand a "hypo syringe and needle." She then turned and pointed to the decedent's husband and said, "I didn't do anything but what you told me to do. He brought his wife here for me to help her out, that he had more children than he could take care of." Spencer asked her, "Did you help her out?" She said, "Well, I tried to."

The accused was taken to the police station where she made a confession describing in detail how she produced the abortion, for which she said she charged decedent $50.00 and received $20.00 in cash. This confession was later transcribed, signed by her and read to the jury but the court refused to permit it to be filed as an exhibit in the case.

The evidence is not only sufficient to prove the *corpus delicti*, but it proves that the accused was the criminal agent.

The accused's next contention is that the court erred in permitting L. L. Buskey, a police officer, to read her confession to the jury. This contention is based on the sole ground that at the time she made the confession the officers did not warn her that her statements might be used against her.

"In Virginia, it is the function and duty of the trial judge in the first instance before admitting a confession, to determine from the evidence, in the absence of a jury, whether the confession has been freely and voluntarily made. In this decision of a question of fact he has a wide discretion. *Omohundro v. Commonwealth*, 138 Va. 854, 121 S. E. 908.

"Thus the admissibility of a confession is a question for the court, and not for the jury. The court does not vouch for the confession,

but admits it to the jury to be considered and weighed like other evidence. * * *" *Upshur* v. *Commonwealth*, 170 Va. 649, 655, 197 S. E. 435. *Campbell* v. *Commonwealth*, 194 Va. 825, 75 S. E. 2d 468.

The circumstances under which the confession was made are as follows: The officers arrived at the accused's home at about 4:00 p. m., August 29, 1956. They read, and gave the accused a copy of, a search warrant, searched the house, arrested her and took her to police headquarters where they arrived at about 5:15 p. m. There, in the presence of the officers and Dr. Barclay, the accused described what acts she had performed on decedent. She said that she made an instrument approximately ¼ to 3/16 of an inch in circumference and two inches long out of elm bark, to which she tied a string in such manner that it could not slip off the bark. She sterilized the bark and string, washed her hands in "Lysol" and with her hands inserted the bark in the womb of decedent. The accused was given a piece of pine wood from which she made a similar instrument and to which she tied a string. These were filed as an exhibit in the case. At 5:50 p. m., thirty-five minutes after her arrival at police headquarters, the oral statements of the accused were transcribed by a stenographer in question and answer form, read and signed by the accused.

The objection to the introduction in evidence of the confession was not made until after the court had determined that it had been voluntarily made, had admitted it in evidence and the witness had been cross-examined in detail as to what took place in the interview with the accused. Following this extensive examination the court took a recess, and on reconvening the accused for the first time raised an objection to the introduction of the confession, and moved the court to strike it from the record. She offered no evidence tending to show that the confession was not freely and voluntarily made. Later she took the stand in her own behalf and admitted that she made the confession, read and signed it but claimed that she was sick, had high blood pressure, was on the "verge of a stroke" and made the statements in order to get rid of the officers.

There is no statute in Virginia requiring an officer to warn an accused in custody that any statement he may make concerning the crime with which he is charged may be used against him. However, we think the better and safer course for an officer to pursue, when a prisoner is about to make a statement, is to warn him that it may be used against him. If the confession is voluntarily made, it is admis-

sible; if not, it should be excluded. The fact that the accused was under arrest when questioned by the officers and was not warned that her statements might be used against her, does not render her confession inadmissible. The general rule is well stated in *State* v. *Thomas*, 241 N. C. 337, 85 S. E. 2d 300, 302, as follows:

"It is not essential to the competency of the defendant's confession that the officers should have cautioned him that any statement made by him might be used against him, and should have informed him that he was at liberty to refuse to answer any questions, or to make any statement, and that such refusal could not thereafter be used to his prejudice. It suffices if the statement were voluntary. * * *" *James* v. *Commonwealth*, 192 Va. 713, 66 S. E. 2d 513; *State* v. *Lord*, 225 N. C. 354, 34 S. E. 2d 205; *State* v. *Matthews*, 231 N. C. 617, 58 S. E. 2d 625, *cert. den.* 340 U. S. 838, 71 S. Ct. 24, 95 L. ed. 615; 5 Michie's Jur., Criminal Procedure, § 56, p. 405; 22 C. J. S., Criminal Law, § 822, p. 1441; 20 Am. Jur., Evidence, § 505, p. 435.

The accused claimed that she was suffering from high blood pressure and had been advised by her doctors to avoid "excitement and chaos." In support of this claim she called Elizabeth Whitehurst, her daughter, who testified that she lived in the home with her mother; that the accused had suffered with high blood pressure for more than 10 years, was under the constant care of several doctors, was unable to stand any excitement, was required to take medicine regularly and was sick in bed two to three times a month. After admitting on cross-examination that she had talked to officers Neighbors and Buskey about her mother's condition, this witness was asked: "Didn't you tell detective Neighbors at that time that your mother had promised you she was not going to do that any more, referring to the abortion?" The accused promptly objected to the question and its admissibility was argued in the absence of the jury. When the jury returned the Commonwealth's Attorney changed the question to read as follows: "Was it because of your mother's condition of health that you had this discussion with her concerning abortions?" The witness answered: "No, sir. That was five years ago when she promised me that." We find no reversible error in the court's refusal to sustain the accused's objection to this question and answer.

There is no merit in the accused's contention that the lower court erred in refusing to give 10 instructions requested by her. The court gave 14 instructions, three requested by the Commonwealth and 11

requested by the accused, which fully and fairly informed the jury of the legal principles applicable to the evidence in the case. Furthermore, the grounds of objection and the assignments of error to the rulings of the court on the instructions were not made and preserved as required by Rules 1:8 and 5:1, § 4.

The accused's final contention is that the court erred in overruling her objection to that part of the closing argument on behalf of the Commonwealth included in the following extract from the record.

"Mr. Spencer [Assistant Commonwealth's Attorney]: This is one of the most serious offenses that can be committed in the Commonwealth of Virginia, and our Legislature thinks it sufficiently serious that they have fixed the punishment from three to ten years.

"One life has departed from this earth because of her conduct. One life which never came into being departed and was released and flushed down the drain.

"Mr. Fine [attorney for the accused]: We object to that. She is being tried for abortion, not manslaughter.

"The Court: The motion is overruled.

"Mr. Fine: Note an exception sir, because it is prejudicial and misleading.

"The Court: The instructions apply to the crime of abortion.

"Mr. Spencer: I refer to the crime of abortion, the punishment for which is from three to ten years in the penitentiary. That is what she is being tried for."

There is no merit in this contention. This argument was not an appeal to passion or prejudice. It was a correct statement of the maximum and minimum punishment prescribed by Code, § 18-68 for producing a criminal abortion, and a statement of facts supported by the record.

For the reasons stated the judgment of the trial court is affirmed.

*Affirmed.*