COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Frank, Petty and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


JAMIE MONTEZ-ELLIS NUNNALLY

v.        Record No. 1604-13-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE RUDOLPH BUMGARDNER, III
JULY 8, 2014


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
C. Peter Tench, Judge

Barbara E. Rosenblatt, Assistant Public Defender (Robert Moody,
IV, Deputy Public Defender, on brief), for appellant.

Susan Mozley Harris, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Jamie M. Nunnally was convicted of conspiracy to obstruct justice, Code § 18.2-460(C).[1]

He maintains the evidence was insufficient because it failed to prove a plan to threaten or cause

bodily harm to intimidate a witness.  Concluding the evidence was sufficient to support a

conviction, we affirm.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).  The defendant was arrested for breaking and entering the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Code § 18.2-460(C) prohibits the intimidation of a witness "by threats of bodily harm or force . . ." in certain types of cases, including "violent felony offenses" such as burglary.

home of Amani McDonald.[2]  McDonald knew the defendant and identified him as one of three men who forced their way into her apartment and stole her wallet.  The defendant was held without bail.

On the day of his arrest, the defendant spoke by telephone with Rashad Dooley.  The call from the jail was recorded.  Referring to McDonald, Dooley told the defendant, "I'm going to put the pressure on her, don't worry about it."  When the defendant asked Dooley if he had spoken to anyone, Dooley answered, "Kwa and all them, they were with me."  The defendant replied, "Hey man, you need to tell Kwa he need to you know what I'm sayin' go ahead cause we did this for his black ass."  Dooley told the defendant he would tell Kwa and for the defendant not to "worry about it."  Dooley immediately put Kwa on the telephone, and Kwa stated, "Yeah, I hear you."  The defendant instructed Kwa, "[Y]'all, apply, apply the pressure for me."

Two days later, Dooley telephoned the defendant and told him he had spoken with McDonald.  Dooley explained that she would agree not to testify in exchange for $500.[3]  The defendant responded, "Man, fuck that bitch, $500 . . . .  Man, fuck that, she ain't getting $500 . . . ."  Approximately six minutes into their conversation, Dooley states, "Yeah, but she, she going to make me have to pop her."  The defendant replied, "That shit.  Man, I told mother fuckers man fucking with your peoples man."  Dooley agreed, stating,

> You right, you right, you right, you right, but I'm gone [sic] make
> sure you get out that shit, but I don't know about your PO shit, but
> I'm gone [sic] make sure you get out of that shit, either that, nah

---

[2] The defendant was also convicted of breaking and entering, Code § 18.2-91, grand larceny, Code § 18.2-95, credit card theft, Code § 18.2-192, and possession of cocaine, Code § 18.2-250.  He did not challenge any of those convictions.

[3] McDonald testified Dooley had approached her prior to trial and had asked her "how much" she would accept to drop the charges, and she told him $500 because she estimated that to be the value of the stolen items.  She stated that she never received the money, and heard "it was told not to be done."

mean, one way or another my nigga, that's blood. I'm gonna make sure you get of that shit. I'm not gonna watch ya'll go down for no bullshit like that.

Minutes later, Dooley reassured the defendant he would "be out . . . real soon" and that he would not "let that shit go that far." The defendant reminded Dooley "we go to court June 18th."

During the last recorded telephone call two days later, Dooley reported he thought the defendant's mother and "them" had talked to McDonald after Dooley gave them McDonald's telephone number. The defendant said he doubted that because he had talked to "them" recently, and they told the defendant they had the phone number, but they had not called McDonald. When Dooley asked what they were "waiting on," the defendant said, "I don't know man, this shit is pissin a nigga off man . . . ." Dooley ended the call by saying, "They God damn, somebody gone have to go to court. That, that shit ain't happening."

"Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993) (quoting Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982)). "In Virginia, the crime of conspiracy is complete when the parties agree to commit an offense. Falden [v. Commonwealth], 167 Va. [542], 544, 189 S.E. [326], 327 [(1937)]. No overt act in furtherance of the underlying crime is necessary. Stevens v. Commonwealth, 14 Va. App. 238, 241, 415 S.E.2d 881, 883 (1992)." Gray v. Commonwealth, 260 Va. 675, 680, 537 S.E.2d 862, 865 (2000).

Proof of the existence of an agreement is an essential element to establish the crime of conspiracy. See Fortune v. Commonwealth, 12 Va. App. 643, 647, 406 S.E.2d 47, 48 (1991). However, proof of an explicit agreement is not required, and the Commonwealth may, and frequently must, rely on circumstantial evidence to establish the conspiracy. See Stevens, 14 Va. App. at 241, 415 S.E.2d at 883.

The telephone conversations were recorded and played in court. The trial court listened to the recordings before finding that the defendant and Dooley conspired to intimidate McDonald. The two were adamant that McDonald would not drop the charges. Dooley assured the defendant that "pressure" would be put on McDonald. The defendant urged them to do so, "Y'apply, apply pressure for me." Even after Dooley indicated that he might "have to pop her," the defendant continued to discuss efforts being made to get the victim to drop the charges.

In this case, the defendant did not expressly state he wanted Dooley to physically harm McDonald, but a rational fact finder could construe his statements as implying an intent to do just that. The defendant was in jail, denied bond, and expecting to stay in jail until his preliminary hearing. Dooley and others were on the outside working to get the charges dropped and the defendant out of jail. The defendant was instructing those who could to put "the pressure" on McDonald for the clear purpose of keeping her from testifying against him.

When the defendant balked at paying McDonald $500, Dooley threatened that he would have to shoot McDonald to prevent her from testifying since bribery seemed out of the question. The defendant's silence was evidence that the defendant agreed to that course of action. See James v. Commonwealth, 192 Va. 713, 718, 66 S.E.2d 513, 516 (1951) (recognizing that a defendant's silence in response to "statement tending to incriminate" him is "admissible in a criminal proceeding against him . . . as evidence of his acquiescence in its truth"). In the subsequent telephone conversations, the defendant continued to demand that "pressure" be applied to get him freed.

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient for a rational fact finder to conclude that the defendant conspired to intimidate the victim of a

burglary to prevent her from testifying against the defendant and two co-defendants.

Accordingly, we affirm.

<u>Affirmed.</u>